**In re James T. BARBEE, Debtor.**

**Bankruptcy No. 87 B 10009.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 29, 1988.

Bennett A. Kahn, Chicago, Ill., for debtor.

Craig Phelps, Chicago, Ill., Chapter 13 Trustee.

### MEMORANDUM AND OPINION

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on the motion of the debtor for confirmation of his Chapter 13 plan. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(L) as a matter involving plan confirmation.

### I. FACTS

On September 10, 1987, the Court conducted confirmation hearings for five Chapter 13 cases, including the case of James T. Barbee (the "Debtor"). In each case, the Chapter 13 trustee, Craig Phelps, reported that no plan payments had been received by his office. Such payments should have commenced 30 days after the plans were filed. *See* 11 U.S.C. § 1326(a).[1] Instead,

---

1. 11 U.S.C. § 1326(a) provides:
    (a)(1) Unless the Court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.
    (2) A payment made under this subsection shall be retained by the trustee until confirma-

tion or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is confirmed, the trustee shall return any such payment to the debtor after deducting any unpaid claim allowed under section 503(b) of this title.

the Debtor's attorney held the payments in escrow until the Court confirmed the plan and approved his attorney fee petition. Thereafter, unless the Court ordered otherwise, the Debtor's attorney intended to pay himself his allowed attorney's fee out of the escrowed funds [2] and to turn over any excess above the attorney's fees to the trustee for distribution to creditors under the plan.[3]

This Court withheld confirmation of the Chapter 13 plan in this case as a test case to determine whether this Court would confirm a plan providing that in lieu of the payments being made to the trustee under 11 U.S.C. § 1326(a), the payments required in advance of confirmation should be made to the Debtor's attorney with the understanding that the attorney would apply those payments against allowed fees and turn over any excess to the trustee on confirmation. Although the Debtor's plan does not include such a provision, an amendment to include one is proposed.

Because the question of whether postpetition payments made to a debtor's attorney for fees qualify as payments made under the debtor's proposed plan as required by 11 U.S.C. § 1326(a) raises serious questions of how Chapter 13 cases are to be administered in this district, with implications beyond this case,[4] the Court ordered the Chapter 13 trustee assigned to the case, Craig Phelps, to file a brief and invited the other Chapter 13 trustee, Jack McCullough and the U.S. Trustee, M. Scott Michael, to file memoranda outlining their positions on the issue. Both trustees and the U.S. Trustee have filed statements of position, all opposing the Debtor's request, and the Debtor has responded thereto.

## II. DISCUSSION

The issue before the Court is simple in one sense. Section 1325(a)(1) provides that before the court can confirm a Chapter 13 plan, the court must be satisfied that "the plan complies with the provisions of this chapter ...." If the plan does not comply with the provisions of Chapter 13, it cannot be confirmed. *Cf. In re Rimgale*, 669 F.2d 426 (7th Cir.1982). Thus, if the payments to the debtor's attorney on account of attorney's fees are not deemed to be payments under the debtor's proposed plan, the plan cannot be confirmed as the debtor will not have complied with the requirements of section 1326(a).

At the outset, it should be made clear that the relief sought by the Debtor could be granted by the Court. Section 1326(a) requires compliance with its terms "[u]nless the court orders otherwise...." Therefore, the Court could order otherwise and confirm the plan. In addition, 11 U.S.C. § 1326(a)(1) nowhere says in haec verba that the payments called for by the proposed plan under that provision are to be made to the trustee. Nevertheless, since 11 U.S.C. § 1326(a)(2) details what the trustee is to do with payments received under section 1326(a)(1) in advance of confirmation and in the event the plan is either confirmed or not confirmed, it is clear that

**2.** By local custom, debtors' attorneys submit their fee application at the time the plan is confirmed. The Court rules on those applications at confirmation or shortly thereafter.

**3.** In his initial brief, Debtor's attorney at one point says that he instructs his clients to make payments to his office "pending confirmation". At another point he says he instructs his clients to begin making payments to the trustee after the initial creditors' meeting "normally" held some 40 days into the case. If the former is true, the Debtor's lawyer might collect several months of payments. If the latter is true, the Debtor's lawyer would be unlikely to collect more than one month of proposed plan payments. In fact, it appears to the Court that the approach differs from case to case depending on such factors as whether the debtor shows up at the initial creditors' meeting and whether confirmation occurs "normally", i.e. one week after the 341 creditors' meeting in accord with local custom or whether confirmation is delayed by creditor or trustee opposition. The difference is irrelevant to the issues before the Court. It does not matter how long the payments to the trustee are delayed so long as section 1326(a) is not fully satisfied at confirmation.

**4.** This case is clearly a test case. The Debtor's attorney in this case files a large number of Chapter 13 cases each year. Other attorneys for Chapter 13 debtors have stated in open court that if the Debtor's attorney succeeds in this case, they will immediately adopt the same practice.

the drafters of section 1326(a) intended that the payments called for by that section would be made to the trustee unless the court ordered otherwise. Therefore, the real issue before the Court is whether it should exercise its discretion to allow this Debtor and other Chapter 13 debtors to make payments under their proposed plans to their attorneys, to be applied against attorneys' fees pending confirmation, rather than to make those payments to the trustee administering the case.

■ The Debtor essentially makes four arguments in support of having this Court allow him to have his plan provide for, and in effect, ratify preconfirmation payments to his attorney for application against allowed attorney's fees in lieu of preconfirmation payments to the trustee. First, he says his ability to comply with the plan payment requirements will be shown equally whether he makes the payments required by his proposed plan to the trustee or to his attorney. Second, the Debtor contends that making the payments to his attorney is more efficient since the attorney will be entitled to a first priority administration claim under § 507(a)(1) of the Code and thus will be paid first anyway. Third, he claims that his attorney is a "creditor" under 11 U.S.C. § 1326(c), and therefore the plan may provide for direct payments to the attorney under that provision. Finally, the Debtor asserts that making proposed plan payments to the trustee rather than the attorney will cause serious cash flow problems for the attorney and will thus jeopardize Chapter 13 case administration. None of these arguments is persuasive.

Section 1326(a) was added to Chapter 13 in 1984 for two ostensible purposes. First, Congress was concerned by the delay in the payments to creditors which would be occasioned by delays in the confirmation process. Second, Congress was worried that the chances of successful Chapter 13 plans would be lessened if debtors got used to having available to them the money they were soon going to have to pay to the trustee under their about to be confirmed plans. Congress feared that they might develop lifestyle habits which would interfere with their ability to perform under the plan. *See* 5 *Collier on Bankruptcy* (MB) para. 1326.01[2] (15th ed. 1987), *citing* S.Rep. No. 65, 98th Cong. 1st Sess., 16 (1983). The Debtor's ability to meet the requirements of 11 U.S.C. § 1326(a) also has the practical benefit of providing the Court with useful evidence for determining whether a plan is feasible as required by 11 U.S.C. § 1325(a)(6) in order for the plan to be confirmed. A debtor who cannot make the required plan payments properly before confirmation is not likely, barring some predictable change in circumstances, to suddenly be able to comply with the plan requirements after confirmation.

It is not true, as the Debtor argues, that the feasibility of the plan, i.e., the debtor's ability to make the payments required by the plan can be shown equally well by payment to either the trustee or to his attorney under the proposed plan. The Court needs to determine not only if the payments have been made, but when they are made as well. A debtor who can make the payments required by the plan in advance of confirmation but cannot do so in a timely fashion may be able to make all payments under the plan but may be unable to comply with the plan. Section 1325(a)(6) clearly requires both an ability to make the payments and an ability to comply with the plan. The trustee's records will reveal the information necessary to determine whether both conditions have been satisfied. There is no evidence the Debtor's attorney could supply the same information. Indeed, even if he could, the Debtor's attorney might find himself in the uncomfortable position of having to reveal to the court the very information which will result in the denial of confirmation of the plan he is seeking to have confirmed.[5]

5. Both the American Bar Association Model Code of Professional Responsibility and Model Rules of Professional Conduct prohibit an attorney from revealing information relating to the representation of a client to the client's disadvantage without the client's consent. *See* Model Code of Professional Responsibility DR 4-101(B)(3), EC 4-5 (1982); Model Rules of Pro-

However, even more important is the fact that the Debtor misses a major purpose underlying 11 U.S.C. § 1326(a). While compliance or noncompliance with the payment requirements of 11 U.S.C. § 1326(a) does provide the Court with useful evidence on the issue of feasibility, it is clear from the payment scheme outlined in 11 U.S.C. § 1326(a)(2) that the provision has another, perhaps more important purpose. Section 1326(a) is clearly intended to provide a fund out of which the costs of a failed Chapter 13 case can be paid. It in effect shifts the risk of failure from the trustee to the debtor. In the event confirmation is denied, the payments made under 11 U.S.C. § 1326(a) are returned to the debtor less the trustee's expenses incurred in administering the abortive Chapter 13 case, expenses such as computer set up costs, notices, and the like. *See* 11 U.S.C. § 503(b)(1)(A). The Debtor's attorney would also be entitled to be compensated from that fund to the extent fees are allowed by the Court. *See* 11 U.S.C. § 503(b)(2). If the Debtor's attorney holds the payments pending confirmation, no similar protection is afforded the trustee. In addition, the Court will have no control over the amount of fees the Debtor's attorney will be allowed to take from the deposited funds in a failed case. Thus, a major purpose of 11 U.S.C. § 1326(a) would be frustrated if the approach proposed in this case is adopted.

This analysis applies equally to show the fallacy that giving the preconfirmation payments to the trustee is unnecessary because the trustee will inevitably simply return them to the attorney for the debtor on confirmation as payment in whole or in part for the Debtor's attorney's allowed fees. In a failed case where confirmation is denied, that is simply not true. In fact, it is not even true in a case where confirmation is obtained.

The application of the Debtor's argument to cases where confirmation is obtained is premised on two assumptions. First, the Debtor assumes that the Court will always award the amount of compensation sought by the Debtor's attorney. Second, the Debtor assumes that the Court will inevitably order that all fees awarded to the Debtor's attorney be paid up front in full as a priority over all other payments required by the plan. Neither of these assumptions is necessarily true. The court does not always award the full amount of compensation sought by debtors' attorneys in Chapter 13 cases. Instead, the attorney submits a fee application at the time of or after confirmation. After notice and an opportunity for a hearing, the court reviews the application and awards an appropriate amount of compensation. While it is often the full amount sought, factors such as the time spent, the debtor's ability to pay, and the quality of the services rendered might lead to a reduction in the fees awarded. *See In re Pettibone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill.1987); *In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987).

Even more important is the fact that the court can and often does provide that the amounts to be paid to a debtor's attorney for fees be spread over part or all of the life of the plan. Such spreading of fees is clearly permissible. *See* 11 U.S.C. § 1326(b). *See also In re Parker*, 21 B.R. 692, 694 (E.D.Tenn.1982). For example, debtors sometimes propose to pay creditors a small percentage of their claims over a long period of time in relatively small monthly payments. In such a case, it may well be inappropriate to have the creditors wait for any payment at all until the debtor's attorney's fee is paid in full, particularly where payment of the attorney's fee will take the full amount of money the debtor proposes to pay to the trustee for a year or more. In order for the small amounts the creditors are to get under the plan to have any real economic significance in present value terms, payments to the creditors should begin as soon as possible. Since the

fessional Conduct Rule 1.8(b) (1983). If a dispute arose as to whether the payments had in fact been made or had been made in a timely fashion to the Debtor's lawyer, the Debtor's lawyer might well have to take the witness stand to testify on the question. Again the ethical problems that would create for the Debtor and his lawyer are clear. *See* Model Code of Professional Responsibility DR 5–102 (1982); Model Rules of Professional Conduct Rule 3.7 (1983).

lawyer is being paid in full, it is not unreasonable to spread those payments over part or all of the life of the plan.

In addition, spreading the fee for the debtor's attorney over part or all of the duration of the plan has the salutatory side effect of maintaining the interest of the debtor's attorney in the proper progress of the plan. The Court hastens to add that the Debtor's attorney in the present case always maintains interest in the case and actively represents his clients in all aspects of all Chapter 13 cases without any such not so subtle pressure from the Court. In fact, he is among the very best in that regard in this Court. However, not all of his fellow debtor's attorneys share his dedication to their clients' cause. Some abandon their clients as soon as they have been paid. Others wait until they are paid in full and then immediately convert the case to chapter 7. *See* 11 U.S.C. § 1307(a). Chapter 13 was not meant to be a device for collecting fees for debtors' attorneys in what are really Chapter 7 cases. The added inducement of unpaid fees to be paid from future plan payments has the salutory effect of helping to assure proper use of Chapter 13 in the debtor's interest, (as opposed to the attorney's interest), and adequate representation of the debtor in connection with such post confirmation matters as claims objections, lien avoidance, plan amendments, and defending motions to lift the stay. The Debtor's third argument is that 11 U.S.C. § 1326(c) allows the court to permit payments to creditors directly by debtors and that section therefore permits the court to allow the debtor to make payments directly to his attorney rather than to the trustee in advance of confirmation. There are a number of responses to this argument. First of all, the Debtor's attorney is not a "creditor" under the Bankruptcy Code because he does not have "... a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". *See* 11 U.S. C. § 101(9). *See also In re Boddy*, No.

87B4759 (Bankr.N.D.Ill. Aug. 5, 1987). Instead, the debtor's attorney has a claim for administrative expenses. *See* 11 U.S.C. §§ 503(b), 507(a)(1). Therefore, payments to a debtor's attorney do not fit within the language of 11 U.S.C. § 1326(c).

Second, by its clear implication, 11 U.S.C. 1326(c) deals only with payments to be made after confirmation of plans, not preconfirmation payments. Section 1326(a) is the provision that deals with preconfirmation payments. That provision allows only payments to the trustee before confirmation. It does not permit any payments by the trustee to creditors or others before confirmation. If 11 U.S.C. § 1326(c) were to be read to allow preconfirmation payments by a trustee or a debtor, it would permit the court to effectively read 11 U.S. C. § 1326(a)(2) out of the Code. In fact, such an interpretation would be injurious to debtors since it would allow the court to order distributions to any or all creditors before confirmation under a proposed plan and then leave the debtor the problem of trying to recover those payments in the event confirmation were to be denied. Obviously, Congress never intended such a result.[6]

Third, and perhaps most important, 11 U.S.C. § 1326(c) codifies the rule that ordinarily in Chapter 13 cases payments under a confirmed plan are to be made by the trustee rather than the debtor. The administration of plans and payments by the trustee in Chapter 13 cases is an important theme. The supervision of the execution of the plan and duty to insure that plan payments are made are primarily the Chapter 13 trustee's duty. *In re Case*, 11 B.R. 843, 846 (Bankr.D.Utah 1981). As a result, the creditor is relieved of continuing to deal directly with the debtor while the Chapter 13 trustee protects the creditor's interest. *In re Foster*, 670 F.2d 478, 490 (5th Cir. 1982). The trustee's duties to ensure systematic accountability include his responsibility to file an annual report, account for

---

**6.** The fact that 11 U.S.C. § 1326(a) was added to the Code in 1984, while 11 U.S.C. § 1326(c) was enacted as 11 U.S.C. § 1326(b) in 1978 as part of the original Bankruptcy Reform Act tends to confirm this analysis. Presumably Congress did not intend in 1984 that the existing provision be used to render the provision it was then adding a legal nullity.

all monies and ensure timely payments. If payments are made directly by the debtor, neither court files, nor trustee records will reflect necessary information to determine successful completion of the plan. *In re Eby*, 38 B.R. 318, 319 (Bankr.D.Ore.1984). Therefore, the Court concludes that 11 U.S. C. § 1326(c) has no application to the instant dispute. Even if it did, no reason is shown why the Court should turn to 11 U.S.C. § 1326(c) to effectively gut the protections afforded to the trustee and other administrative claimants by 11 U.S.C. § 1325(a).

The Debtor's final argument is that if debtor's attorneys cannot collect their fees up front from preconfirmation payments which otherwise should be made to the trustee, cash flow problems will result. These cash flow problems it is argued will then induce debtors' lawyers to urge their clients to file Chapter 7 cases rather than Chapter 13 cases in order to alleviate the attorneys' financial woes. Trustee McCullough seriously questions this argument on its merits. However, sliding over the merits, the argument is not only irrelevant, it is very troubling.

The purpose of bankruptcy is to relieve a debtor's financial woes, not to relieve the debtor's attorneys financial problems. Codes of professional conduct make it clear that in recommending which chapter of the Bankruptcy Code a debtor should chose, the debtor's attorney is to be motivated solely by what will best serve the debtor's interests. What will best serve the lawyer's interests is an impermissible consideration. *See, e.g., In re WPMK, Inc.* 42 B.R. 157, 162–63 (Bankr.Haw.1984). *See also* Model Code of Professional Responsibility DR 5–101(a) (1982); Model Rules of Professional Conduct Rule 1.7(b) (1983).[7] The Court is confident that all debtors' attorneys will continue to give debtors disinterested advice as they have in the past about which Chapter of the Bankruptcy Code the debtors should select.

The Debtor also suggests that this Court should use its equitable powers under 11 U.S.C. § 105(a) to in effect read 11 U.S.C. § 1325(a) out of the Bankruptcy Code and to validate many years of "local practice" by permitting the Debtor's attorney to keep the preconfirmation payments for fees. It is neither necessary nor appropriate to the carrying out of the provisions of Chapter 13 to validate this alleged local practice. The fact is that regardless of how long this practice might have been permitted before 1984, the 1984 Amendments to the Code effectively abolished it. The Debtor's attorney might not like that change. However, his complaint should be addressed to Congress, not to this Court. This Court will not amend the Bankruptcy Code judicially to make it more acceptable to the Debtor's attorney.

The Court has considered the other arguments raised in the Debtor's briefs and finds them unpersuasive. The sum and substance of this ruling is that the Court declines to exercise its discretion to alter the requirements of 11 U.S.C. § 1326(a). The Court will deny confirmation of the Debtor's plan unless all sums received by the Debtor's attorney from the Debtor postpetition are turned over to the trustee within seven days. If such payments are turned over to the trustee, the Debtor's plan is confirmed.

**7.** Of course, if cases which properly belong in Chapter 13 are filed as Chapter 7 cases by consumer debtors with substantial ability to pay debts, the Court has available to it 11 U.S.C. § 707(b), added to the Bankruptcy Code in 1984 at the same time as 11 U.S.C. § 1325(a). The Bankruptcy Amendments and Federal Judge-ship Act of 1984, Pub.L. No. 98–353, § 320, 98 Stat. 357 (1984). Under 11 U.S.C. § 707(b), the court can, on its own motion or that of the U.S. Trustee, dismiss such cases as a substantial abuse of Chapter 7. *See, e.g., In re Whitby*, 51 B.R. 184 (Bankr.E.D.Mich.1985); *In re Bryant*, 47 B.R. 21, 26 (W.D.N.C.1984).