**In re Lisa Gay WALTERS, Debtor.**

**Bankruptcy No. 98–40698–2–13.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 24, 1998.

Dennis G. Muller, Kansas City, MO, for Debtor.

Richard V. Fink, Kansas City, MO, Chapter 13 Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed her Petition for Rehabilitation under Chapter 13 of the Bankruptcy Code on February 23, 1998. That same date, she filed a Chapter 13 Plan calling for weekly payments of $135.00. On May 22, 1998, Debtor filed amended schedules and a Second Amended Chapter 13 Plan, which changed the weekly payments from $135.00 to $52.00. On May 27, the Chapter 13 Trustee sent a letter to Debtor and her counsel indicating that he intended to take up at a hearing on June 1, 1998, the issues of compliance with § 1325(a)(6), in that the debtor was at that time $790.00 delinquent in Plan payments, and compliance with § 1322(d), in that the Plan would take 61 months to complete with no dividend to the general unsecured creditors. Subsequent to the hearing, this Court entered an Order dated June 4, 1998, denying confirmation.

On June 10, the debtor filed a motion to set aside the Order denying confirmation, suggesting that the debtor was attempting to reduce the secured claim of Ford Motor Credit and that she intended to abandon her residence and release the debt to the mortgage holder. According to Debtor, these events would cause the Plan to be confirmable.

The Court conducted a hearing on these issues on June 22, at which time the Court entered an Order reducing Ford Motor Credit's secured interest to $5,500.00 and finding its unsecured claim to be $3,459.25. The Court directed the Trustee to review the debtor's amended Plan and advise the Court as to its confirmability. Meanwhile, the Court entered an Order dated June 26, denying the debtor's motion to vacate the Order denying confirmation.

On July 9, the debtor then filed a motion suggesting that the June 26 Order was entered in error because the Trustee had been directed to review the debtor's Plan again for confirmability and so the Plan should not have been denied confirmation in the meantime. In addition, the debtor asserted that the Trustee's calculation of a $790.00 delinquency was incorrect because "[t]he plan had been filed only five days before, and in addition to proposing to pay the secured claim of Ford Motor Credit Co. at $5000.00, had proposed to surrender her home in cancellation of the debt, thus eliminating or substantially reducing any payments due under previously proposed plans."

That same day, the Court entered an Order denying Debtor's request to correct the June 26 Order and affirming that although the Plan had been denied confirmation, the Plan was still pending confirmation based on the Trustee's report as to confirmability following the reduction of secured claims.

Meanwhile, on June 29, 1998, the Chapter 13 Trustee filed an Objection to Confirmation, suggesting that the Court needed to determine whether the debtor's proposed Plan complies with 11 U.S.C. § 1325(a)(6) and indicating that the debtor was, on June 29, ten weekly Plan payments delinquent. On July 10, the Trustee filed a Motion to Dismiss under § 1307(c)(6) for the reason that the debtor was in default in Plan payments in the amount of $894.00.

On July 20, the debtor filed a Motion and Response to Trustee's Motion to Dismiss. In it, the debtor requests the Court to waive any missed payment prior to the filing of the second amended Plan on May 22, 1998. Again, she points out that the Ford Motor Credit secured claim has been reduced from nearly $9,000 to $5,500, and that she had surrendered her home and that because of these actions, she would be able to complete payoff of her creditors under the second amended Plan in approximately 39 months.

Then on July 30, Debtor filed another Response to Trustee's Motion to Dismiss, alleging that the Trustee had miscalculated the debtor's delinquency in Plan payments. Specifically, the debtor asserts that the Trustee improperly calculated the delinquency on the basis of payments which were due under the plans proposed prior to the second amended Plan filed May 22. In other words, the Trustee calculated the delinquency to include the missed $135.00 weekly payments called for under the original Plan. Debtor asserts the amended Plan superseded the prior plans and thus the missed payments under those prior plans should be considered suspended. This Court conducted a hearing on the Trustee's Objection to Confirmation, and took these issues under advisement.

Consequently, the issues are (1) whether delinquencies in plan payments under a prior unconfirmed plan are nullified by the filing of an amended plan which reflects a decrease in secured debt and proposes decreased plan payments; and (2) whether, for purposes of calculating a debtor's delinquency in proposed plan payments, the payment amount called for in an amended plan should be applied retroactively to "repair" a prior default in plan payments. In other words, do delinquencies under a prior plan survive an amended plan for purposes of determining whether the amended plan should be confirmed? Rather surprisingly, this Court was unable to find any authority giving a definitive answer on these questions. Consequent-

ly, the starting point is the actual language of the relevant Code sections.[1]

The Bankruptcy Code and Rules impose several very strict deadlines and limitations on debtors who opt for reorganization over liquidation. *See In re Collier*, 193 B.R. 1, 2 (Bankr.D.Ariz.1996). Pursuant to § 1321 and Fed. R. Bankr.P. 3015(b), a debtor must file a plan within 15 days after filing the bankruptcy petition, and such time may not be further extended except for cause shown and on notice. Section 1326(a)(1) provides, "Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed." 11 U.S.C. § 1326(a)(1). Thus, read in conjunction with § 1321 and Rule 3015(b), § 1326 requires a debtor to begin making payments under the plan within 45 days of filing her petition. Failure to do so is grounds for dismissal. *See* 11 U.S.C. § 1307(c)(4).

More specifically, § 1326(a) provides that "the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed." Read alone, the plain reading of this section indicates to the Court that it is intended to mandate that the payments under a particular plan must be commenced within 30 days after *that plan* is filed. Thus, if an amended plan is filed, payments under *that amended plan* must commence within 30 days after *the amended plan* is filed. There is no mention of retroactivity in this provision.

Section 1323, regarding modification of a plan before confirmation, provides in relevant part:

(a) The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title.

(b) After the debtor files a modification under this section, the plan as modified becomes the plan.

---

1. The Court can think of no reason why an amended plan could not provide for the make-up of delinquent payments or why an amended plan could not specifically provide that pre-amendment arrearages be caught up through some oth-

er means. The Court also believes the debtor could have filed a motion to suspend the pre-amendment payments. However, since these issues are not presently before the Court, it declines to decide them.

11 U.S.C. § 1323(a) and (b). The question here is whether the modified plan becomes "the plan" retroactively for purposes of calculating pre-confirmation payment delinquency. This Court believes it does not.

 The Court believes that § 1323(b) does not change the meaning of § 1326 upon the filing of a modified plan. The Court does not interpret the language of § 1323(b), that "[a]fter the debtor files a modification under this section, the plan as modified becomes the plan," to mean that the plan as modified becomes "the plan" retroactively. Rather, it *becomes* "the plan" *"after the debtor files a modification."* Again, the Court finds no mention or implication in these provisions that the amended plan provisions should be applied retroactively.

It is true, as Debtor suggests, that an amended plan replaces the prior plan. *See Nielsen v. DLC Investment, Inc. (In re Nielsen)*, 211 B.R. 19, 23 (8th Cir. BAP 1997). However, the Court believes that this means that the amended plan terms simply become the new terms. The replacement does not alter obligations which have already accrued.

This Court's conclusion is supported, albeit admittedly somewhat tenuously, by the number of cases which have held that for purposes of determining whether plan payments inappropriately extend beyond the 60–month limitation imposed by § 1322(d), payments commence when the very first payment is due under the original plan, which is within thirty days after the first plan is filed and within 45 days after the petition is filed, as described above. *See e.g., In re Collier*, 193 B.R. 1, 2–3 (Bankr.D.Ariz.1996); *In re Evans*, 183 B.R. 331, 332–33 (Bankr.S.D.Ga. 1995); *In re Duckett*, 139 B.R. 6, 8 (Bankr. E.D.Tex.1992); *In re Cobb*, 122 B.R. 22, 26– 27 (Bankr.E.D.Pa.1990); *In re Woodall*, 81 B.R. 17, 18 (Bankr.E.D.Ark.1987).[2] These courts have held that the filing of an amended plan does not change the fact that the 60– month plan duration limitation began to accrue 30 days after the first plan was filed.

In other words, the amount of time for calculation of duration of the plan does not change upon the filing of a modified plan. As the filing of an amended plan does not alter the *time* that has accrued prior to the filing of the amended plan, this Court finds that likewise, the filing of an amended plan does not alter the *payments* that have accrued prior to the filing of the amended plan.

Most importantly, however, the Court declines to adopt the debtor's position for practical reasons. Allowing a debtor to cure preamendment plan payment defaults by simply filing an amended plan which reduces the plan payments would open a Pandora's Box which surely was not intended by the drafters of the Bankruptcy Code. Furthermore, the Court would remind the debtor that if it accepts her position, the opposite would also be true: namely, if a debtor filed an amended plan which called for *higher* plan payments than the original plan provided, retroactivity would have to be applied thereby causing the debtor to be in default for the lower pre-amendment payments. The Court is rather certain that Debtor would not argue that, in such a case, the amended plan's higher payments should be applied retroactively so as to *create* a deficiency.

In sum, the Court believes that the normal course, providing for a cure of pre-amendment arrearages in an amended plan or filing a motion to suspend payments, is the better course.

For the foregoing reasons, and based on the file and records herein, the Court hereby denies confirmation of the debtor's second amended proposed plan.

---

**2.** The Court is aware that there are cases to the contrary, i.e., holding that the 60–month time period begins at confirmation rather than when the first payment becomes due under § 1326(a). *See West v. Costen*, 826 F.2d 1376, 1378 (4th Cir.1987); *In re Eves*, 67 B.R. 964, 966–967 (Bankr.N.D.Ohio 1986). Nevertheless, this Court believes that the approach taken by the *Collier* line of cases is the more sound approach.