In re Pablo VINCENTE, Debtor.

No. 99–31261DWS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 3, 2001.

Dawn Williams, Philadelphia Legal Assistance, Philadelphia, PA, for debtor.

Joseph F. Riga, Whittlesey McDowell & Riga, Maple Shade, NJ, Margaret Gairo, McCabe, Weisberg & Conway, P.C., Philadelphia, PA, for Advanta.

Edward Sparkman, Philadelphia, PA, for Chapter 13 Trustee.

Dave P. Adams, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

## OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Debtor's request for confirmation of his Chapter 13 Plan (the "Plan") and the objection (the "Objection") of Advanta Finance Corporation ("Advanta") thereto. At the conclusion of the confirmation hearing on September 21, 2000, a briefing schedule was established. Advanta's brief was timely filed on October 20, 2000. The Debtor's brief was filed on November 13, 2000 but it addressed not the Plan under consideration but rather one filed contemporaneously therewith (the "Amended Plan"). Advanta contends that the Debtor may not moot issues by modifying its Plan at this stage in the proceedings, and it is the Plan, not the Amended Plan, that should be ruled upon here.[1] The Amended Plan deletes some of the objectionable provisions contained in the Plan but still is objectionable to Advan-

ta which filed a Sur Reply detailing its reasons for so maintaining and alternatively contending that the Amended Plan too is not confirmable. Before addressing the issues presented in this contested matter, some factual background is required.

## BACKGROUND

■ Debtor filed this Chapter 13 case on September 9, 1999.[2] On October 8, 1999, he filed all schedules and his Chapter 13 plan (the "Plan"). On November 29, 1999, the first meeting and examination of the Debtor pursuant to § 341 was held, and confirmation was scheduled for February 10, 2000. On December 15, 1999, Advanta filed an objection to confirmation of the Plan. On February 9, 2000, the day before the confirmation hearing was to be held, Debtor filed an adversary complaint contesting the validity, priority and extent of Advanta's lien based on alleged violations by Advanta of various state consumer protection laws. Based thereon, the Chapter 13 Trustee (the "Trustee") agreed to continue confirmation until March 23, 2000, then May 11, 2000, then June 23, 2000, then July 6, 2000, then August 10, and finally September 21 when I refused to grant further continuances.[3] On June

---

1. The parties' contrary views on this procedural matter were elicited in a telephone conference on November 28, 2000. I allowed them the opportunity to supplement their memoranda by addressing this issue, and Advanta additional time to brief its legal objections to the Amended Plan. All briefs have been filed, and the matter is now ripe for decision.

2. I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed. R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D.Ill.1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir.1995).

3. It has been this Court's practice to defer to the Trustee regarding the scheduling of confirmation hearings. Thus, it has not been necessary to secure Court approval for the continuances, and indeed I was unaware of

the repeated continuances in this case. It appears that it has been the Trustee's procedure to continue without question any confirmation hearing in a case where an adversary proceeding or claim objection is pending. Recently I have directed my deputy to leave on the list for my review confirmation hearings that are being, in effect, generally continued because of the pendency of adversary cases. In examining the dockets in such cases, I have become aware of an abuse of the Trustee's seemingly logical approach to the movement of these cases by Debtors who are making no payments to the Trustee and/or their mortgagee on the grounds of these frequently deferred contests. While reasonable continuances are a practical response to the burden on the parties and court from duplicative litigation, I am not sanguine to continue confirmation as has been the practice. Accordingly, in the face of an objection to plan feasibility, counsel should not assume repeated continuances will be granted but rather should be prepared for the Court to conduct the confirmation hearing at which the

28, 2000, the Debtor pursuant to leave of Court, amended the Complaint presumably with the intention of putting at issue the modification of the mortgage by seeking a determination of the extent and validity of Advanta's asserted lien pursuant to § 506(a).[4] On the same date, the Trustee filed a motion to dismiss the case on the grounds that the Plan did not appear feasible. Doc. No. 29. That motion then began to track the continued confirmation hearings.

At the September 21, 2000 hearing, the Trustee was prepared to recommend confirmation because he found the Plan, a $5 plan that required the Trustee to pay no claims, feasible. Advanta, on the other hand, pressed its Objection. No evidentiary record was made by either party. Because of the recurring nature of the issues presented by the Plan, a template used by his counsel, Philadelphia Legal Assistance ("PLA"), and the divisive views of the

Debtor and Advanta on the propriety of the provisions therein, I established a liberal briefing schedule expressing my intention, by deciding the matter *sub judice*, to provide guidance to parties in Chapter 13 cases. As noted above, while Advanta's brief was filed on October 20, 2000, Debtor filed the Amended Plan when his turn to respond tolled.

The Plan contains a number of provisions that Atlanta finds objectionable. Some were carried forward to the Amended Plan, and others were, after over one year, simply dropped.[5] Most significant of the seemingly abandoned provisions are that Debtor's payments to the Chapter 13 Trustee are limited to $5 per month and that all claims are dealt with "outside the plan." While not addressed on Advanta's written objection, the propriety of such plan terms was expressly questioned by the Court at the

debtor will be required to do more than intone the pendency of a claim objection or adversary proceeding.

4. Notably the sole reference in the Complaint (attached to Debtor's Memorandum of Law In Support of Confirmation of His Amended Chapter 13 Plan ("Debtor's Memorandum") as Exhibit D) to the § 506(a) issue is in paragraph 1 of the "Introduction." There are no facts pled that relate to the modification of the secured claim and the Counts of the Complaint and the associated relief sought relate solely to the non-bankruptcy causes of action. Indeed a review of the Debtor's Motion to Amend Complaint, Doc. No. 8, Adv. No. 00–0137, contains a representation that (1) it was not apparent that all the claims asserted in the Amended Complaint were available at the time and (2) to the extent that new requests for relief are made, they are based on the same set of facts alleged in the original Complaint. While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.*, 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed. R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual asser-

tions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them." *Larson v. Groos Bank*, 204 B.R. 500, 502 (W.D.Tex.1996)). Thus, I cannot discern whether the Amended Complaint is intended to raise the § 1322(b)(2) issue as Debtor contends. The adversary case has been transferred to Hon. Judith K. Fitzgerald for trial, and I am unaware of whether this deficiency in the pleading has been waived by Advanta although I note that it has not raised the issue in this contested matter.

5. Debtor's counsel has made clear that it is not because of any view that these provisions are impermissible that they were deleted but rather that the amendment represented a strategic decision for this case alone. Thus, it is expected that the challenged provisions will find their way into subsequent plans which may or may not be challenged by mortgagees. Given the Court's practice of relying on the Trustee, rather than reviewing every plan myself, presumably Debtor's counsel assumes that some number of these plans will secure confirmation where the mortgagee, unlike Advanta, does not object. However, as I have instructed the Trustee to hold for my consideration such plans, this issue, while mooted here, will not escape review. Presumably this intention will assuage Advanta's concern that it litigated the now deleted provisions of the Plan for naught.

confirmation hearing.[6] As noted above, Debtor contends these provisions are no longer before the Court because the Plan has been superceded by the Amended Plan. That document amends paragraph 11[7] which contains the Debtor's obligation to make monthly payments *directly to Advanta of $547.00 commencing with confirmation* and now provides that a payment of $6,300[8] representing *14 payments of $450.00 to the Chapter 13 Trustee shall be made on November 13, 2000,* the date the Amended Plan was filed, and that on December 8, 2000 monthly payments of $450.00 will commence until the

Plan terminates which "in no event" shall be later than 60 months after the commencement of payments under the plan. Amended Plan §§ 7, 11.

Carried forward from the Plan to the Amended Plan is the primary provision to which Advanta took exception in its written Objection. Specifically, it states that the Plan seeks to modify its rights as a creditor secured solely by an interest in real property that is the Debtor's principal residence in violation of § 1322(b)(2). In support of that contention, it notes that on December 3, 1999, it filed a proof of claim (of which I take judicial notice[9]) in the

6. Indeed I had questioned certain of these provisions in the context of other Chapter 13 cases wending their way toward confirmation to the PLA lawyers who routinely incorporate them in their plans. With respect to the $5 plan, this was the first time this provision had been presented to me in the context of a contested confirmation, and I specifically asked the parties to address it in their post-confirmation briefs. Thus, Debtor's counsel observation that Advanta did not raise this issue in its written Objection is irrelevant. As the Court has an independent duty to determine whether the Debtor's plan satisfies the mandatory requirements of § 1325(a), *see* pages 175–76 *infra*, the briefing requirement in which Advanta engaged at some cost only to see the issue mooted by the last minute Amended Plan, was to assist the Court. Debtor's counsel also believes she has mooted the issue of when plan payments must commence but as noted at pp. 177–78 *infra*, the Amended Plan has not cured that defect in the Plan.

7. The exact language of paragraph 11 of the Plan is as follows:

11. Commencing with the confirmation of this plan, the Debtor shall pay directly to Advanta, monthly, the amount of $547.00 until the entire amount of the Class 3 claim of Advanta is paid in full with simple interest on the unpaid balance of the allowed secured claim at the rate of 6% per annum. All payments which have been made by the Debtor or on the Debtor's behalf to Advanta since September 8, 1999, the date of the Debtor's voluntary petition, shall be credited to reduce the amount due on Advanta's filed and allowed Class 3 claim. It is anticipated that at the time of confirmation, the total amount due to Advanta on its filed and allowed secured Class 3 claim will not be greater that $25,000.

The exact language of paragraph 11 of the Amended Plan is as follows:
11. On November 13, 2000 Debtor shall pay to the Trustee a sum of $6,300.00, which equals 14 monthly payments in the amount of $450.00 each. Beginning December 8, 2000, Debtor shall commence monthly payments to the trustee in the amount of $450.00. These payments shall continue until this plan terminates in accordance with paragraph 7 above. All payments which may have been made by the Debtor or on the Debtor's behalf directly to Advanta since September 8, 1999, the date of the Debtor's voluntary petition, shall be credited at confirmation to reduce the amount due on Advanta's filed and allowed Class 3 claim and thus reduce the amount that Advanta is entitled to receive from the trustee. It is anticipated that at the time of confirmation, the total amount due to Advanta on its filed and allowed secured Class 3 claim will not be greater $25,000.00 and could be as little as $0.00. Present value interest on the unpaid balance of Advanta's allowed secured class 3 claim will begin to accrue at confirmation.
Emphasis added.

8. Prior to the undertaking contemplated by the Amended Plan, the Debtor had made one $60 payment to the Chapter 13 Trustee on January 14, 2000 in response to a Trustee's Motion to Dismiss for failure to make plan payments. No monthly payments of $547.00 were made to Advanta.

9. While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh*, 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding au-

amount of $56,664.81 with an arrearage component of $22,902.36 and that the Amended Plan provides that the balance of the mortgage debt will be paid through the Plan, but that sum will not exceed $25,000. *See* Amended Plan ¶ 4(c), 5(c). Moreover, the Amended Plan contains a provision intended to effectuate that treatment of Advanta:

> Confirmation of this plan shall constitute a finding that if Advanta is the holder of a secured claim secured by a lien on 4032 North 5th Street, Philadelphia, PA 19140, it is secured by an interest in more than real property and its rights may be modified in accordance with § 1322(b)(2).

Amended Plan ¶ 9. Debtor asserts that he has filed an adversary proceeding seeking to bifurcate Advanta's secured claim.[10] Advanta also adopts in its objection to the Amended Plan, the objection previously asserted in connection with the Plan that it is not fully funded, a feasibility issue, and that the Plan does not provide Advanta with the present value of its secured claim.

## DISCUSSION

### I.

■ The Code does not fix the temporal moment of confirmation contemplated in § 1323. Is it at the conclusion of the confirmation hearing as Advanta contends or is it upon entry of the confirmation order as urged by the Debtor? While I requested each of the parties to brief this question, neither could find any authority directly on point.[11] Interestingly *Nielsen v. DLC Investment, Inc. (In re Nielsen)*, 211 B.R. 19 (8th Cir. BAP 1997), cited by Debtor, appears to support Advanta's view. In that case, the bankruptcy court was found to have erred by considering only the original plan and not the amended plan. However, importantly in this case, the amended plan had been filed *before* the confirmation hearing, and at that hearing, the court heard argument on the amended plan, accepted briefs and affidavit without objection. The *Nielsen* Court, while noting that the Debtors had filed the modified plan to address objections, stated that "Debtors have the right to modify the plan *before the confirmation hearing*, § 1323(a), and 'the plan as modified becomes the plan.' § 1322(b)." *Id.* at 22 (emphasis

---

thority." *In re Indian Palms Assoc.*, 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)). Thus, I may take judicial notice of the existence of the claim although I do not make any finding on its ultimate allowance.

10. Debtor contends that the issue of whether Advanta's rights under the mortgage may be modified under § 1322(b)(2) "is more properly determined within the adversary proceeding filed by Debtor (Adv. # 00–0317)." Debtor's Memorandum at 3 n. 2. *See also id.* at 7. As noted below, that vehicle is the required procedure so as to preserve the lien creditor's due process rights. However, the pendency of an adversary proceeding does not foreclose the Court's consideration of the issue in the context of confirmation when the mortgagee has lodged a written objection as here.

Debtor's brief also asserts that there was no evidence taken at the confirmation hearing. The reason for that is simple. As stated above, none was offered. Since Debtor is

seeking a deemed finding on the modification issue by reason of confirmation and a cap on the amount of the secured claim, it is disingenuous to contend that the issue is more properly determined within an adversary proceeding. Had Debtor sincerely wanted to test the propriety of the modification, an adversary proceeding could have been tried long ago on this simple issue. (Of course that could have had the adverse consequence of a court ruling some time ago that modification was not permitted.) In any event, I find the issue squarely presented in this contested confirmation. Clearly if there is no basis for modification of the secured claim, a plan based on a modification is not confirmable.

11. The lack of authority is not surprising since normally the amendment of a plan to delete disputed provisions would be a welcomed event. Because of the recurring nature of these provisions, (*see* note 5 *supra*), the effort Advanta made in briefing the objection and the timing of the amendment only when Debtor's responsive brief was due, Advanta presses its objection.

added). Thus, the *Nielsen* case provides no support for the view that the Court must consider an amended plan filed after the confirmation hearing is concluded and the matter is *sub judice*. The other case cited by Debtor, *Stafford v. Stafford (In re Stafford)*, 123 B.R. 415 (N.D.Ala.1991), deals with a post-confirmation modification. However, the court, in passing, compares the provisions of § 1323 dealing with pre-confirmation modification with § 1329 at issue in that case. The district judge notes that the language of § 1323 is straightforward and undeniable, conferring on the debtors the clear and unequivocal right to modify their plan "at any time before the bankruptcy court made its *order of confirmation.*" *Id.* at 419 (emphasis added). From the context of this decision, it is clear that the court did not consider the scenario where a contested confirmation gives rise to a period where the matter is under advisement, rather than one in which the confirmation order is entered at conclusion of the hearing as is usually the case. In any event, I respectfully disagree with the district court's conclusion that the language of § 1323 is "undeniable." One only has to note other uses of the phrase "before confirmation" to confirm the ambiguity.[12] For example, § 1324 and Fed. R.Bankr.P. 3015(f) deal with objections to confirmation and provide that objections shall be filed before confirmation of the plan. Adopting Debtor's understanding of "before confirmation" to extend to the entry of the confirmation order would allow objections to be filed after the confirmation hearing is concluded,[13] a doubtful proposition. Indeed Debtor's position on the permissibility of amendment is at odds with the Debtor's position on the permissibility of objection, *i.e.*, that Advanta's objections briefed, but not lodged in its writ-

ten objection are untimely and should not be considered. *See* Debtor's Memorandum at 2 n. 1.

▮ I have taken some time to set forth what I believe is, at best, an ambiguity in the Code as to whether plan amendment sought after a contested confirmation is concluded requires Court approval. I reject the Debtor's view that he can propose a plan, make no payments thereunder, file on the eve of confirmation and after five months an adversary proceeding that raises issues known to him when the case was commenced, use the pendency of that adversary case to support repeated requests to adjourn confirmation while still making no payments, and then when the court refuses to continue confirmation further, agree that his plan raises legal issues which require an extended briefing schedule and when his turn finally comes to support his positions, amend the plan without any consequence. In the least I find this history calls into question the good faith of the Debtor (although I suspect it is really legal strategy advanced by his counsel). Thus, while Debtor may be correct that to rule on the confirmability of the Plan at this point would be to render an advisory opinion, it does not follow that I have to allow the amendment he has filed. I am unpersuaded that § 1323 which allows the Debtor the right until confirmation to amend a plan, is intended to support this practice. However, because I believe it would be in the best interests of the Debtor and Advanta to ascertain once and for all whether a plan can be confirmed by this Debtor and because the remaining objectionable provisions were carried into the Amended Plan from the Plan which has been thoroughly litigated, I

12. Advanta also points to the other Code provisions that specify "order of confirmation" or "confirmed plan" rather than merely "upon confirmation" as evidence that if Congress wished to designate the entry of the confirmation order as the discreet point in time, it knew how to do so. Advanta's Letter Brief dated December 6, 2000 at 2. Since the provisions to which it refers are expressly

about the confirmation order, I do not find that argument persuasive.

13. This is different than allowing time for filing objections when the confirmation hearing is adjourned. *See In re Ryan*, 160 B.R. 494, 496 (Bankr.N.D.N.Y.1993).

will allow filing of the Amended Plan which is by agreement of the parties now before me for a determination of its confirmability.[14]

## II.

■■■ In *In re Szostek*, 886 F.2d 1405, 1410–14 (3d Cir.1989), the Third Circuit Court of Appeals held that without regard to whether there has been an objection to confirmation, the requirements of § 1322(a), being mandatory, must be satisfied if a plan is to be confirmed. Accordingly, it follows that the bankruptcy court has an independent duty to determine whether the Amended Plan is confirmable. *In re Fricker*, 116 B.R. 431, 436 (Bankr.

E.D.Pa.1990).[15] In *Fricker*, former Bankruptcy Judge David A. Scholl discussed the process by which Chapter 13 plans are confirmed in this district, a process that is followed today. He noted the deference the Court gives to the Trustee's reports regarding the satisfaction of the § 1322(a) requirements and the reality that absent objection by a creditor and upon recommendation of confirmation by the Trustee, the plan is typically confirmed. He noted the bankruptcy judge's "inability to vigorously review all Chapter 13 plans for defects preventing confirmation which may have slipped past the Trustee" but confirmed that should the court "find something amiss," the judge has the discretion to deny confirmation.[16] *Id.* at 437. Final-

---

14. Creditors are entitled to have notice of the filing of an amended plan before being required to object or litigate their objections at a confirmation hearing, and indeed where insufficient notice is provided, the court will adjourn confirmation for the benefit of the creditor. L. King, 8 Collier on Bankruptcy ¶ 1323.02, at 1323–3 (15th rev. ed.2000). This is another reason for concluding that an amended plan cannot be filed after the confirmation hearing is concluded. The potential abuse in terms of delay is apparent. The creditor has a Hobsen's choice—either go forward with the confirmation of a modified plan without adequate time to prepare its response or allow the debtor to move the goal post and go into overtime. In this case, Advanta, while rejecting the view that an amended plan can moot issues that are joined before the court, is nonetheless prepared to make that choice, alternatively responding by objecting to the Amended Plan. Since the notice period is for the benefit of creditors and the only creditor affected by the Amended Plan is Advanta who does not seek more time to review and respond to the Amended Plan and since neither party sought or now seeks to place any new facts in the record, I will accept the Debtor's invitation to consider the Amended Plan although it was the Plan, not the Amended Plan that I took under advisement. Finally, although Debtor has not argued as much, I would note that he is not entitled to another evidentiary hearing on the Amended Plan since the objectionable provisions are merely carried over from the Plan as to which he had a full and fair opportunity to present his facts.

15. While recognizing that the plan must comply with all the provisions of § 1325, Debtor unequivocally states that "the Amended Plan

*must* be confirmed over the remaining objections of Advanta." Debtor's Memorandum at 5 (emphasis added). Believing he has artfully mooted from consideration all problems by amending the Plan, he focuses solely on § 1325(a)(5), stating that absent an objection by either the trustee or the holder of an allowed secured claim, I must confirm the Chapter 13 plan if the debtor can show the value of the property to be distributed under the plan is not less than the allowed amount of the secured claim. In attempting to define the Court's role, the Debtor loses sight of the Court's obligation in the confirmation process as generally recognized in the decisional law as articulated in *Fricker*. With the exception of the disposable income requirement of § 1322(b) which must be raised by the Trustee or the holder of an allowed unsecured claim, the court may address *sua sponte* deficiencies in a plan without regard to the pendency of an objection. *See, e.g., In re Fox*, 249 B.R. 140, 144 (Bankr.D.S.C.2000); *In re Walsh*, 224 B.R. 231 (Bankr.M.D.Ga.1998); *In re Fulton*, 211 B.R. 247 (Bankr.S.D.Ohio 1997) *In re Pellegrino*, 205 B.R. 479 (Bankr. E.D.Pa.1997); *In re Davis*, 68 B.R. 205 (Bankr.S.D.Ohio 1986).

16. In the instant case, the Trustee recommended confirmation of the Plan. His analysis was limited to whether there was sufficient money in the Plan to meet the feasibility test. Since the Plan provided that all creditors would be paid outside the Plan, the $5 payments were adequate to pay the filed claims he was to pay and thus he viewed the Plan as feasible. Needless to say, this approach appeals to Debtors who avoid the supervision of the Trustee and control of the Court by mak-

ly the *Fricker* decision set forth the applicable burdens of proof as follows and which I adopt herein:

> The creditor has the initial burden of articulating a clear and cognizable objection. However, the debtor has the burden of ultimate persuasion, and is therefore obliged to make a record if such is necessary to persuade us to overrule the objection and confirm the plan in the face of such an objection. Moreover, we are empowered to raise §§ 1325(a)(3), (a)(5), or (a)(6) objections *sua sponte* at the confirmation hearings. As in the case of many § 1325(b)(1)(B) objections, we may be able to resolve many such objections without adducing any testimony. We would go further and state that we would grant the debtor a continuance as of course to meet any objection raised *sua sponte* or belatedly and/or orally.[17] However, if timely written objections are filed, the debtor acts at peril in not appearing to testify in support of confirmation at the confirmation hearing.

*Id.* at 438.

### III.

■■■ I begin with the issue that Debtor thought was dodged by the Amended Plan, *i.e.*, the failure to commence plan payments within 30 days after the plan is filed as required by the plain language of § 1326(a). Contrary to the statement in Debtor's Memorandum at 2 and Supplemental Memorandum of Law in Support of Confirmation at 2, I did not ask that this issue be briefed nor do I consider it an open issue mooted by the Amended Plan. The Amended Plan provides for monthly payments reduced from $5 to the Trustee and $547 to Advanta "outside the plan" to $450 to the Trustee for payment of Advanta under the plan commencing on November 13, 2000, not within 30 days of the commencement of the case. The fact that the initial payment is, by Debtor's calculation, the equivalent of 14 months of payments at the new amount, does not cure the defect in the Plan which provided no payment until confirmation. It is thus with some surprise that I note the refusal of Debtor's PLA counsel here, Dawn Williams, Esquire, to accept the clear statutory mandate of § 1326, although apparently not with sufficient resolve to desire to have it addressed in this contested confirmation.[18] She cautions me that to rule on that aspect of the Plan after her

ing payments "outside the plan." While the Trustee's analysis may be too myopic, the Debtor has amended the plan to provide for Advanta's secured claim which is now to be paid by the Trustee, choosing not to test this provision here.

17. The liberal briefing schedule I granted was intended to provide the Debtor with the opportunity to respond to the purely legal issues raised by the Court, issues that had been previously raised in the context of other cases involving the same counsel. Thus, the Debtor had a full and fair opportunity to address the issues raised *sua sponte* by the Court. The only factual issues were those raised by Advanta in its written objection as to which the Debtor had sufficient notice. Nonetheless he elected not to appear or offer any other evidence.

18. This plan provision (which based on the Trustee's motion to dismiss for lack of payment procedure can buy the debtor three or four free months at a minimum and brought the Debtor fourteen months here by the deferral of confirmation due to the pending adver-

sary case) has been a common strategy employed by PLA. Yet the law requiring the commencement of plan payments (and therefore the triggering of the plan period) within 30 days after the filing of the plan could not be clearer. *E.g., In re Collier*, 193 B.R. 1, 4 (Bankr.D.Ariz.1996); *In re Cobb*, 122 B.R. 22, 26–27 (Bankr.E.D.Pa.1990); *In re Smith*, 85 B.R. 729, 729–30 (E.D.Va.1988). Indeed failure to so provide may result in *sua sponte* dismissal of the case. *Id.* Moreover, the practice acknowledged by Debtor's counsel of escrowing the contemplated payments until confirmation or the resolution of some adversary proceeding or claim objection is an unacceptable substitute for the duty to commence plan payments as required under § 1326(a). *In re Barbee*, 82 B.R. 470, 472–73 (Bankr. N.D.Ill.1988) (practice subverts the policy underpinnings of § 1326(a) of demonstrating whether debtor can meet plan payment requirements and provide a fund from which the costs of a failed Chapter 13 case can be paid). Cautioning against the routine deferral of commencement of plan payments until confirmation, I directed Williams months ago

**178**

amendment would be an advisory opinion, believing that the Debtor can easily manipulate the Code by amending a plan after a contested confirmation hearing by paying the deliberately deferred payments. I respectfully disagree. In *In re Walters*, 223 B.R. 710 (Bankr.W.D.Mo.1998), the Court rejected the Debtor's contention that a modification of his plan reducing his plan payments effected a suspension of his delinquent payment obligations under the original plan. The Court denied confirmation of the amended plan stating that it could not alter obligations that have already accrued. "The Court does not interpret the language of § 1323(b), that '[a]fter the debtor files a modification under this section, the plan as modified becomes the plan,' to mean that the plan as modified becomes the plan retroactively." *Id.* at 713. Debtor's belated attempt to cure the § 1326(a) violation is too little, too late. Accepting Debtor's resolution, without any recognition of his duty to commence payments within 30 days of the filing of the petition unless the court orders otherwise, renders the § 1326(a) requirement meaningless.

■■■ To secure confirmation, a plan must comply with all applicable provisions of this chapter. 11 U.S.C. § 1325(a)(1). Section 1326(a) is such a provision, and Debtor has not complied with it. Alternatively, the inclusion of a blatantly impermissible plan provision in the Plan and the manipulative attempt to effect a cure after 14 months of non-payment evidences post-petition misconduct and deprives the plan proponent of the requisite finding under § 1325(a)(3) that the plan has been proposed in good faith and not by any means forbidden by law. *Fricker*, 116 B.R. at 442 (presentation of a plan which is significantly flawed is post-petition misconduct foreclosing confirmation under § 1325(a)(3)).

■■■ I turn now to the written objection lodged by Advanta which was briefed by both parties. I refer to the question of Debtor's compliance with § 1325(a)(5) regarding the treatment of Advanta's secured claim under various provisions of the Amended Plan. The distributive provision of paragraph 5c states that the Trustee will pay all sums in his possession to Advanta until 100% of its filed and allowed secured claim is paid in full to the extent the claim is a secured claim within the meaning of § 506(a). This is an appropriate way to deal with the uncertainty at the inception of the case regarding the amount of the secured claim and the possibility of a modification under § 1322(b)(2). However, Debtor boldly points to this provision without mention of other delimiting plan provisions, thus contending that Advanta is receiving the treatment to which it is entitled under the Code. He would have this Court believe that paragraph 9, which contains a finding that Advanta's secured claim may be modified under § 1322(b)(2) because Advanta is the holder of a claim secured by more than residential real estate, and paragraphs 4 and 11, which state the Debtor's "anticipation that at the time of confirmation that amount shall not be in excess of $25,000," are informational only. Notwithstanding the precatory language in paragraphs 9, 4 and 11, other provisions of the Amended Plan make clear that without regard to the outcome of a § 506(a) action, the Amended Plan is funded to pay Advanta no more than $25,000. *See* paragraph 11 ($450 × 60 months = $27,000), paragraph 13 (Debtor is required to make no payments to Advanta other than that will be made by the Trustee under the plan) and paragraph 7 (The plan terminates when the Advanta claim is paid in full except "in no event shall payments continue for more than 60 months after the commencement.")

that this form provision is contrary to the Code, pointing her to the clear and unequivocal language of § 1326(a). Thus without regard to whether or not the issue was successfully finessed here, I caution her that Rule

9011 requires that every paper presented to the court is a certification that such paper is not presented for any improper purpose and that the legal contentions therein are warranted by existing law.

■■■■■ As noted by the Third Circuit Court of Appeals in *In re Lewis*, 875 F.2d 53, 56 (3d Cir.1989), the provisions of a plan comprise an integrated plan and must be read together. *Accord Konover v. Testa (In re Testa)*, 197 B.R. 459, 461 (Bankr. M.D.Pa.1996). In *Lewis*, the Court upheld the debtor's right to seek a post-confirmation modification of the secured claim, finding that there was no time limit for filing a § 506(a) motion and that it was clearly contemplated by the plan. However, as the Court in *Strong v. United States (In re Strong)*, 203 B.R. 105, 114 (Bankr.N.D.Ill. 1996), made clear in embracing *Lewis*, when the precise amount of the claim is set forth in the plan or when the debtor has challenged the allowed amount of the secured claim through a provision in the confirmed plan, subsequent litigation is not contemplated. *Id.* at 114 (*quoting* 2 K. Lundin, Chapter 13 Bankruptcy § 6.10 at p. 6–25). The view of the Court in *Woolaghan v. United Mortgage Services, Inc. (In re Woolaghan)*, 140 B.R. 377 (Bankr. W.D.Pa.1992), is instructive on this point.

This court believes that "when confirmation of a plan does not purport to treat a specific creditor in a way such that its rights are determined and when determination of allowed claims is not necessary to a determination of whether the plan meets the standards of confirmation, confirmation is not an appropriate deadline for objection" to a claim.

*Id.* at 380 (*quoting* 8 Colliers, § 3007.03 (15th ed.)). By inverse reasoning, where the plan does seek to fix a creditor's rights and where a determination of the creditor's claim is necessary to determine whether the plan meets the confirmation standards, the debtor is put to his proof. In this case, the Amended Plan does not contemplate the outcome of an adversary proceeding or § 506 motion but rather impermissibly seeks to adjudicate the modification issue by a unilateral provision in the plan.[19]

Courts have repeatedly found unconfirmable a plan that attempts to impair rights properly adjudicated through an adversary proceeding, a claim objection or a § 506 motion. Most recently my colleague Judge Thomas M. Twardowski so held in *In re Kressler*, 252 B.R. 632 (Bankr. E.D.Pa.2000), stating as follows:

Our holding today that a debtor may not cramdown and avoid a secured creditor's lien through the plan confirmation process without first taking an "affirmative step" such as filing an adversary complaint to avoid the lien or filing an objection to the secured creditor's proof of claim, which, if the objection seeks a determination of the validity, priority or extent of the creditor's lien, will become an adversary proceeding, *see* Fed. R.Bankr.P. 3007, has support in the case law, *see Cen–Pen Corp. v. Hanson*, 58

**19.** In addition to seeking to modify Advanta's lien by limiting it to the Debtor's valuation of the real estate, the plan also modifies certain contractually agreed remedies under the loan documents. For example, paragraph 25 while undertaking that Debtor shall be responsible for making real estate payments, states that "under no circumstances should Advanta do so." Paragraph 26 embodies the same undertaking and prohibition with respect to insurance. Seemingly if Debtor fails to honor his agreement, the plan would deprive Advanta of any contractual right to be reimbursed if it sought to protect its collateral.

The efficacy of this strategy which presumably seeks to bind the affected creditor, is questionable. The prevailing view is that secured creditors whose liens are sought to be modified through a plan are not bound by the confirmation order even with notice of the plan and confirmation hearing. *E.g., In re Linkous*, 990 F.2d 160 (4th Cir.1993) (confirmation order vacated with respect to secured creditor); *Keene v. Charles*, 222 B.R. 511, 513 (E.D.Va.1998) (plan provision releasing lien on completion of plan payments not given effect, *aff'd*, 178 F.3d 1284 (4th Cir.1999)); *In re Therneau*, 214 B.R. 782 (Bankr.E.D.N.C. 1997) (creditor not bound to value of premises which underlay confirmed plan); *Owens v. Fleet Mortgage (In re Owens)*, 132 B.R. 293 (Bankr.E.D.Pa.1991) (mortgagee not bound to confirmed plan's implicit assumption as to valuation of premises). Thus, confirmation of such plan in the face of a sleepy mortgagee may be at best a Pyrrhic victory.

F.3d 89, 92–94 (4th Cir.1995); *Sun Finance Co., Inc. v. Howard (Matter of Howard)*, 972 F.2d 639, 641–42 (5th Cir. 1992); *Foremost Fin'l. Serv. Corp. v. White (In re White)*, 908 F.2d 691 (11th Cir.1990); *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552–59 (5th Cir.1985); *In re McKay*, 732 F.2d 44, 45–48 (3rd Cir.1984); *Wright v. Commercial Credit Corp.*, 178 B.R. 703, 705 (E.D.Va.1995); *Bisch*, 159 B.R. at 548–50; *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 320–21 (9th Cir. BAP 1991); *Spadel v. Household Consumer Discount Co. (In re Spadel)*, 28 B.R. 537, 539–40 (Bankr. E.D.Pa.1983), *see also In re Siciliano*, 167 B.R. 999, 1017 (Bankr.E.D.Pa.1994); *Owens v. Fleet Mortgage (In re Owens)*, 132 B.R. 293, 296–97 (Bankr.E.D.Pa. 1991), and is derived from both a literal reading of the Bankruptcy Rules and a concern for protecting the due process rights of the secured creditor. While we recognize that some courts have permitted debtors to cramdown and avoid a secured creditor's lien solely through the plan confirmation process, *see Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98, 106–08 (Bankr.D.N.J.1993); *see also In re Dennis*, 230 B.R. 244 (Bankr. D.N.J.1999), we disagree with this approach and decline to follow it.

*Id.* at 635. *See also In re Fuller*, 255 B.R. 300, 303 (Bankr.W.D.Mich.2000). These cases make clear that a creditor's lien rights may not be affected unless it has notice and opportunity to defend against the debtor's attempt to do so. While the procedural mechanism may vary depending on the Code provision on which the debtor relies to accomplish his end, the due process requirement is inviolate. As stated by the Fourth Circuit in *Linkous*, *supra:*

> The procedural framework for valuing collateral as a part of a section 506(a)

determination is contained in Bankruptcy Rule 3012:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other person the court may direct.

Only one circuit—the Eleventh—has applied Rule 3012 to the issue of notification of a § 506(a) valuation. *In re Calvert*, 907 F.2d 1069 (11th Cir.1990). It concluded that while a § 506(a) valuation hearing may be held in conjunction with a confirmation hearing, "[m]ere notice that the bankruptcy court will hold a confirmation hearing on a proposed bankruptcy plan, without inclusion of notice specifically directed at the security valuation process, does not satisfy the requirement of Rule 3012." 907 F.2d at 1072.

In order to satisfy due process requirements, "the notice [of the proceedings] must be of such nature as reasonably to convey the required information...." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657 (*citing Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)). In the present case, the information required by statute is that Linkous plans to hold a section 506 valuation hearing. Therefore, in order "reasonably to convey the required information," Linkous' notice to creditors must state that such a hearing will be held. Consequently, the notice to Piedmont was inadequate as it did not make reference to an intent to reevaluate the secured claims pursuant to § 506(a).

*Id.* at 162–63. *Cf. Fox*, 249 B.R. at 144 (provision in plan that sought to discharge student loan contrary to § 1328(a)(2) by "including non-conforming language in the hopes that such provision slips pass the review of the affected student loan creditors" rendered plan non-confirmable).[20]

---

**20.** In noting that creditors should be able to rely on the overall statutory scheme established by Congress, the *Fox* court proffered a

The Debtor presumably would argue that these cases do not apply to it. After all the Amended Plan does not speak of voiding any lien. Indeed it expressly provides for Advanta to retain its lien and be paid 100% of its secured claim. However, reading all the plan provisions *in pari materia*, I find that Debtor seeks now to confirm a plan that will pay, by his own admission, no more than $25,000, not whatever the court will decide, after which the lien will be deemed satisfied. Amended Plan ¶¶ 5c, 14. While giving lip service to the need for a judicial determination of the amount of the secured claim, it seeks a finding that the secured claim may be modified because it is secured by collateral other than residential real estate and without having secured that determination, fixes the lien claim at an amount no greater than Debtor's unilateral valuation of the real estate.

 This deemed modification provision is particularly troublesome because the Debtor is on notice of this Court's published decision, in which his counsel's law firm represented the debtor, rejecting his legal position regarding the right to modify a mortgage where rents are included and yet in the fourteen months this

message that has particular resonance in this case:

> Creditors should be assured that the debtor plays by the established rules of the game and has been required to meet and adhere to the mandatory provisions of Title 11 before being granted confirmation. Anything less warrants denial of confirmation of the debtor's proposed plan.

*Id.*

21. As stated above, the § 506(a) action to determine the extent and validity of Advanta's lien was added on June 28, 2000 by amendment to the Complaint filed February 9, 2000, the day before the first scheduled confirmation hearing. However, not until the Debtor filed his Memorandum in support of confirmation on November 13, 2000, did he articulate any basis for a § 506(a) valuation. He now asserts that Advanta has taken a security interest in rents and attaches the Debtor's mortgage with Advanta to evidence this fact. As Debtor correctly points out elsewhere with respect to Advanta's record, *see* Debtor's

case has been pending, he has not seen fit to test his view of the law further.[21] In *In re Abruzzo*, 245 B.R. 201 (Bankr.E.D.Pa. 1999), *vacated and remanded on other grounds*, 2000 WL 420635 (E.D.Pa. April 10, 2000), I considered a debtor's contention that an interest in rents was personal property which supplemented the real property that secured the mortgage claim and therefore allowed modification of the secured claim under § 1322(b)(2). I stated therein:

> Pennsylvania statutory law defines the rights and interests in property transferred by a deed purporting to convey a fee simple interest in real estate:
>
> All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatsoever, of the grantor or grantors, in law, equity, or otherwise howsoever, of, in, and to the same, and every part thereof, together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, heredita-

Memorandum at 2 n. 1, exhibits attached to briefs are not entitled to evidentiary weight. *In re MacDonald*, 222 B.R. 69 (Bankr.E.D.Pa. 1998) (loan documents attached to brief as exhibits and not offered into evidence cannot be considered); *In the Matter of Holly's, Inc.*, 190 B.R. 297, 301 (Bankr.W.D.Mich.1995) (documents attached to brief not admitted into evidence will not be considered). However, had the mortgage been properly made part of this record, it would have disclosed the grant of security in the real estate located at 4032 N. 5th Street, Philadelphia, PA.

> TOGETHER with all buildings and improvements thereon and additions thereto, including alleys, passageways, rights, liberties, privileges, hereditaments and appurtenances whatsoever belonging, or appurtenant thereto, and all rents therefor (herein called the "Mortgaged Premises").

It is this form document upon which Debtor relies. Notably there is no evidence, nor even a contention, that the real estate is leased and generating rents.

ments, and appurtenances whatsoever thereto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof. 21 P.S. § 3. The statute establishes that real estate includes the rents, issues and profits arising from improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances associated with the land. *Accordingly, it is not surprising that courts have uniformly rejected the contention that language in a mortgage granting a security interest in such items as rents,* royalties, water rights, water stock, issues and profits *create a security interest in personal property, generally considering these items to be a component of a fee simple interest in real estate.* Citicorp Mortgage, Inc. v. Kane (In re Hirsch), 166 B.R. 248, 249–54 (E.D.Pa.1994) (rights, rents, royalties, water rights and stock); *Hackling v. Midfirst Bank (In re Hackling)*, 231 B.R. 590, 591 (Bankr.E.D.Pa.1999) (rents); *In re Anderson*, 209 B.R. 639, 641–42 (Bankr.M.D.Pa.1997) (rents); *Rosen*, 208 B.R. at 349–50 (rents and profits); *Mellon Bank, N.A. v. Crystian (In re Crystian)*, 197 B.R. 803, 804–05 (Bankr.W.D.Pa.1996) (rights, rents, royalties, mineral, oil and gas rights and profits, water rights and stock); *Wilkinson v. Fleet Mortgage Corporation (In re Wilkinson)*, 189 B.R. at 327, 329–30 (Bankr.E.D.Pa.1995) (rents, issues and profits); *see also Marine National Bank v. Northwest Pennsylvania Bank & Trust Co.*, 308 Pa.Super. 154, 159, 454 A.2d 67, 70 (1982) (right to unaccrued rents is interest in real property).

*Id.* at 209–10. (emphasis added.) In the face of this overwhelming authority, Debtor takes no action to challenge my conclusion but rather seeks confirmation of a plan that seeks my judicial ratification of position I have clearly rejected twice. *See also Green Tree Discount v. Miller (In re Miller)*, 1999 WL 1052509, at *11–13 (Bankr.E.D.Pa. Nov. 5, 1999). In support of his position, he cites to the Third Cir-

cuit's decisions in *Sapos v. Provident Institution of Savings in Town of Boston*, 967 F.2d 918, 921 (3d Cir.1992) and *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 128–29 (3d Cir.1990), as though they actually held as much, and fails to address my explicit rejection of those cases as standing for the proposition he advances. In *Abruzzo*, 245 B.R. at 209 and *Miller*, 1999 WL 1052509, at 13, I distinguished these cases by pointing out that the security interests granted the mortgagees therein included other personal property so that the rents in the mortgage were not dispositive. Debtor does not respond to this point, merely citing the cases without qualification.

Moreover, Debtor's contention that the filing of adversary no. 00–137 raising state law defenses to Advanta's claim and obliquely bifurcation under § 506(a) allows it to secure confirmation of a plan treating Advanta's secured claim in this fashion is unsupportable. As I understand Debtor's argument, so long as there is an objection to a claim (therefore obviating allowed claim status at that juncture), the creditor cannot object to its treatment in the plan and the debtor can request confirmation, as done here, that treats the claim as though the debtor has prevailed. Debtor Memorandum at 6. Debtor's syllogism is as follows: Since Debtor has objected to Advanta's secured claim, Advanta does not have an allowed claim and its objection to the Debtor's plan on the basis of its failure to pay the full amount of the secured claim must fail. Whether Advanta is the holder of an allowed secured claim will be determined in the yet to be tried adversary case.

The Debtor offers no authority for his analytical framework. Debtor simply fails to explain how that post-confirmation adjudication supports my finding that Advanta is retaining its lien and the value of the property it is receiving is not less than the amount of its secured claim. His view, if correct, would put a premium on unre-

solved litigation and loses sight of § 502(c) which provides for the estimation of any unliquidated claim that may hold up the administration of the estate. *See In re Claypool,* 122 B.R. 371, 372 (Bankr. W.D.Mo.1991) "[I]n order to support feasibility of plan, it may be necessary for the court to estimate the unliquidated, unsecured claim of the Bank pursuant to 11 U.S.C. § 502(c);" *Fricker,* 116 B.R. at 438 ("We note that bankruptcy courts are authorized to go forward with confirmation for the benefit of the debtor and all other creditors, even when the final liquidation of a claim of a particular creditor is impossible, by allowing the estimation of claims. *See* 11 U.S.C. § 502(c))." *See also In re Larson,* 245 B.R. 609, 614 (Bankr.D.Minn. 2000) (to confirm plan, court needs to determine whether trustee could reasonably be expected to succeed in adversary proceeding avoiding transfer). While practically speaking it may be prudent to simply defer confirmation to allow the claim to be fixed, where as here, confirmation has been deferred for over one year and payments were not being made, the Debtor lost that accommodation. The only other option, if a debtor insists on seeking to confirm a plan that impairs a lien creditor's rights, is to meet his burden under § 1325(a)(1). This Debtor chose to do nothing, and that is another reason confirmation alludes him in this case.

■■■■ While it would be sufficient to stop at this point since it is clear to me that the Amended Plan is not confirmable, I will nonetheless address the other specific objections raised by Advanta. Advanta contends that the Amended Plan is not feasible. As noted above, the Debtor presented no evidence on any issue, this one being no exception. However, I may take notice of Debtor's Schedules to assist in resolving this issue. *See Larson v. Groos Bank, supra,* 204 B.R. at 502 (statements in schedules). *See also In re Musgrove,* 187 B.R. 808 (Bankr.N.D.Ga.1995) (same); *In re Leonard,* 151 B.R. 639 (Bankr. N.D.N.Y.1992) (same). According to the Debtor's Schedule I, his monthly income is $1,371.40. According to Debtor's Schedule J, his expenses without regard to his monthly mortgage obligation are $776. That leaves $595.40 of disposable income available each month to fund the Amended Plan. Taking into account the $6,300 being paid for the 14 months through November and adding $27,300 ($595.40 × remaining 46 months), the total plan fund is $33,670. The secured claim filed by Advanta is $56,664.81. Without regard to the $25,000 cap which I have held to be improper, the Amended Plan provides for the full payment of the secured claim with interest at 6%. Clearly the Debtor's disposable income is insufficient to fund the Amended Plan.

■■■■ Advanta also objects to the interest contemplated to be paid to it under the plan, contending that it does not provide it with "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim not less than the allowed amount of the claim" as required by § 1325(a)(5) where a holder of a secured claim does not accept the plan. The Amended Plan provides interest at 6%.[22] It is the Debtor's burden to affirmatively prove that he has satisfied the mandatory provisions of § 1325(a). His failure to make any record in response to this objection so as to substantiate the 6% rate provided also renders the plan unconfirmable.[23]

**22.** The interest rate in the parties' agreement is presumptively the appropriate rate to be utilized where, as here, the parties fail to provide evidence that the agreed rate is different than the rate the lender would currently charge for a loan of similar character, amount and duration. *GMAC v. Jones,* 999 F.2d 63, 70 (3d Cir.1993). However, the loan documents are not part of this record. Al-

though Advanta has attached its promissory note to its brief, as stated above, documents attached to briefs are not competent evidence. *See* n. 21 *supra.* In the face of an objection and the absence of any evidence, this objection is resolved on applicable burdens of proof.

**23.** There are other provisions in this Amended Plan, part of the boilerplate that resides as

For all of the foregoing reasons, the Debtor has not sustained his burden for confirmation of the Amended Plan. Since it is funded only to support payment of the Advanta lien claim as modified through a § 1322(b)(2) strip down, it cannot be approved. Moreover, given the findings memorialized in this decision, including the inability of the Debtor to fund a plan that would deal with Advanta's debt on any other basis, the fourteen months he enjoyed bankruptcy protection without making any meaningful payment of his debts, the use of litigation to stall, not advance, his reorganization, and the filing of two plans containing patently unlawful provisions, I see no constructive end in allowing the Debtor to file a further amended plan. In so finding, I recognize that Debtor's non-bankruptcy law claims framed in the pending adversary proceeding, including one for rescission of his mortgage, have yet to be tested. However, as they are non-bankruptcy claims, they may be advanced in a non-bankruptcy forum. Perhaps the outcome there will support a future attempt at reorganization under Chapter 13. Of course, if the Debtor is successful on the recision claim, as he confidently claims he will be, bankruptcy relief would serve no useful purpose.

Having denied confirmation of the Amended Plan and refused to allow additional time for filing a plan, I also find that this case is subject to dismissal under § 1307(c)(5). An order shall therefore be entered for the Debtor to show cause why an Order of dismissal shall not issue and why Debtor should not be barred from future filings under Chapter 13 absent a change in circumstances.[24] An Order consistent with this Memorandum Opinion shall issue.

---

a fixture in the PLA form, that have questionable validity on due process grounds. For example, paragraph 4(a) limits priority claims to those designated in the plan and states that any creditor otherwise entitled to such a priority that does not object to the plan is deemed to waive it. While an administrative creditor may agree to less than full payment as required by the Code, 11 U.S.C. § 1322(a)(2), lack of objection is not synonymous with consent. Paragraph 20 seeks to bind a utility to a limited remedy upon Debtor's subsequent default of an adequate assurance payment. These provisions on their face appear to be traps for the unwary, seemingly violating notions of fundamental fairness but positioning the Debtor for a claim that third parties who failed to object are bound under principles of *res judicata*.

24. To the extent Debtor objects to this relief, he will be present and make an appropriate testimonial record to demonstrate that further bankruptcy relief is not futile.