### In re Pablo VINCENTE, Debtor.

### No. 99–31261DWS.

United States Bankruptcy Court, E.D. Pennsylvania.

March 22, 2001.

Dawn Williams, Esquire, Philadelphia, PA, for Debtor.

Joseph F. Riga, Esquire, Maple Shade, NJ, for Advanta Finance Corp.

Edward Sparkman, Esquire, Philadelphia, PA, Chapter 13 Trustee.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

On January 3, 2001, this Court entered an Order and Opinion reported as *In re Vincente*, 257 B.R. 168 (Bankr.E.D.Pa. 2001) ("Vincente I") denying confirmation of the Debtor's Amended Plan and refusing Debtor the opportunity to file a further amended plan. Having so ruled, I also scheduled a hearing for the Debtor to show cause why this case should not be dismissed under 11 U.S.C. § 1307(c) and why Debtor should not be barred from future filings under Chapter 13 absent a change in circumstances. I noted that if Debtor objected to this consequence, he should appear and "make an appropriate testimonial record to demonstrate that further bankruptcy relief is not futile." *Id.* at 184 n. 24.[1]

---

1. Debtor had failed to appear at the contested      confirmation hearing.

■ At the scheduled hearing, Debtor appeared with his counsel who proffered three reasons for opposing dismissal: (1) Debtor can propose a confirmable plan; (2) Vincente I was incorrect in concluding that the inclusion of rents as additional security did not allow Debtor to modify the mortgage of Advanta Finance Corp. ("Advanta") pursuant to 11 U.S.C. § 1322(b); and (3) the Debtor's pending adversary proceeding may reduce or eliminate Advanta's secured claim so as to allow a feasible plan to be proposed. I will respond to each point.

1. *The possibility of proposing an amended plan that would be confirmable.* Debtor's simple solution to my conclusion in Vincente I that Debtor is incapable of securing confirmation because he has insufficient disposable income to treat Advanta's secured claim as required by § 1322(b) is to delete the claim from the plan and provide for payment outside the plan. The term "outside the plan" is used with little precision in Chapter 13 cases. It may mean that the claim will not be dealt with at all, *i.e.*, it is not provided for in the plan, or alternatively, it may mean that the debtor, not the Chapter 13 trustee, will be the disbursing agent for payments provided under the plan. *In re Harris, et al.*, 107 B.R. 204, 205 (Bankr. D.Neb.1989).[2] The two constructions have very different consequences, and thus I carefully inquired of Debtor's counsel her intended meaning of the term. She indicated that she meant *not provided for* under the plan.

The Debtor's goal in this bankruptcy case, according to his own testimony, is to save his home.[3] I therefore questioned

---

**2.** Finding the term a misnomer as to the latter usage since payments are pursuant to the plan without regard to the identity of the disbursing agent, courts have eschewed such language. *E.g. Harris, supra* ("I shall refer to debts as either being 'provided for' or 'not provided for' under the plan. Payments will be described as being made either by the debtor or through the trustee."); *In re Caulfield*, 82 B.R. 55, 57 (Bankr.S.D.Ohio 1988) (there are no such payments as payments outside the plan; a debt not to be paid pursuant to any provisions of a debtor's proposed plan is referred to as an "excluded debt"); *In re Hankins*, 62 B.R. 831, 836 (Bankr.W.D.Va. 1986) (terms "inside" and "outside" the plan are misleading and are not to be used).

Moreover, while the general view appears to be that fully secured claims may be excluded from the plan, a majority of courts limit the debtor's ability to modify undersecured claims "outside the plan." *See, e.g., Foster v. Heitkamp (In re Foster)*, 670 F.2d 478 (5th Cir.1982) (impermissible to treat current portion of claim outside the plan where arrears are treated under the plan); *Greenspan v. Davis (In re Glasper)*, 28 B.R. 6 (9th Cir. BAP 1983) (same); *In re Harris, supra (same)*. I need not reach that issue here where the contemplated plan, as discussed above, is not confirmable on feasibility grounds. Accord-ingly, I still leave to another day and another case the propriety of the provision of Debtor's first plan that treated Advanta under the plan by modifying its secured claim but paying it "outside the plan" and making $5 monthly plan payments to the Chapter 13 trustee.

**3.** This is an unfortunate case since the Debtor has done everything he was told to do by his counsel, paying $15,000 to his counsel's escrow fund since the inception of this case in June 1999. Indeed he made every monthly payment of $552 since that time plus a previously undisclosed, but overlooked by counsel, $4,000 deposit at the inception of the case. (The misplaced $4,000 further supports my view articulated in Vincente I, 257 B.R. at 177 n. 18, that escrowing plan payments with counsel is an unacceptable substitute for commencing plan payments as required under § 1326(a)). However, the strategy fashioned by Debtor's counsel assured that Advanta would see none of that money until the adversary case filed somewhat late in the case was litigated. Rather than yield a settlement, this posture has resulted in the Debtor's loss of bankruptcy protection from Advanta. Whether Advanta would have been agreeable to work with Debtor to restructure his loan to an affordable level if it had gotten these payments is a question that regrettably will be unanswered.

the efficacy of a bankruptcy case that does not affect the debt that needs to be addressed to provide Debtor with the relief he seeks. Debtor's position is that while Advanta's claim would be excluded from the bankruptcy case, the Debtor would still be protected by the automatic stay from Advanta's exercise of its state law remedies so long as he is providing adequate protection under § 362(d). What form that adequate protection would take is unknown as the Debtor did not indicate how he intended to treat Advanta "outside the plan." [4]

Debtor cannot have it both ways. If he chooses to ignore Advanta in his bankruptcy case because he cannot a propose a confirmable plan which includes its debt, he will be unable to modify Advanta's rights and benefit from the provisions of the Bankruptcy Code afforded to debtors in connection with their Chapter 13 reorganizations.[5] This issue was addressed in *In re Waldman*, 75 B.R. 1005 (Bankr. E.D.Pa.1987), where the debtor filed an objection to a creditor's secured claim contending her plan did not provide for the claim. The creditor complained that the debtor placed her in an "indefinite state of 'limbo' under which she will have no relief pursuant to the Bankruptcy Plan and at the same time will be precluded from proceeding on the lien." *Id.* at 1006. The

Court provided guidance regarding the permissibility and consequences of not providing for a secured claim under the plan:

> Our conclusion in *Evans* [*In re Evans*, 66 B.R. 506 (Bankr.E.D.Pa.1986), *aff'd*, 77 B.R. 457 (E.D.Pa.1987) ], following the reasoning of the court in *Foster* [*Foster v. Heitkamp (In re Foster* ), 670 F.2d 478 (5th Cir.1982) ] was as follows:
>
>> Therefore, as long as a debtor does not attempt to modify the rights of secured parties per 11 U.S.C. § 1322(b)(2) in his plan, by curing arrearages therein or in any other respect, he clearly has the option of not dealing with the secured claim at all in his plan. *Id.* at 509–10.
>
> We reaffirm our holding in *Evans*, noting that Collier concurs therewith. 5 COLLIER ON BANKRUPTCY, ¶ 1325.06[2][b], at 1325–31 (15th ed.1987).

*Id.* at 1007. The Court went on to state:

> Therefore, what we are holding, in essence, is that, when a debtor opts to deal with a creditor "outside the Plan" and, thus, as if the bankruptcy never existed as to that creditor, the debtor must forebear use of the Code to affect the rights of the secured creditor in any other way.

*Id.* at 1008. *See also Caulfield*, 82 B.R. at 57 (the exclusion of a claim operates for all

---

4. Notably I have already concluded that Debtor is unable to make payments to Advanta that would pay its debt over the life of a Chapter 13 plan, a more liberal requirement than if he were required to perform under the mortgage contract outside the bankruptcy context. Thus, the argument that some form of adequate protection payment could support continued protection by the stay is at best theoretical and speculative and at worst an invitation to yet more litigation over the question of the adequacy of the yet to be defined adequate protection payment. In any event, for the reasons that follow, I reject Debtor's contention that adequate protection payments

are relevant to a secured creditor excluded from treatment under the plan.

5. This assumes that there are any bankruptcy remedies available to Debtor that would allow him to impair Advanta's rights under its mortgage. I have already concluded that he may not take advantage of § 1322(b), an issue that he has presented to the appellate court for review. His decision to exclude Advanta's claim stems from that unfavorable decision. However, there should be no more favorable consequence to him by taking Advanta out of his plan. He still has to pay according to the mortgage contract.

purposes connected with the debtor's plan).

■ The Court was asked but refused to limit this rule to cases where the debtors agreed to immediate relief from the automatic stay. However, it recognized that "[b]eing dealt with outside the Plan may make it quite easy for the secured claimant to obtain relief from the automatic stay, and hence proceed exactly as if there had been no filing." *Id.* at 1007 (*quoting Evans,* 66 B.R. at 510). *See also Unicor Mortgage, Inc. v. Hildebrand (In re James),* 255 B.R. 837, 838 (Bankr. M.D.Tenn.1999) ("In fact, by excluding the mortgage payments from the plan, the debtor made it easier for Unicor to obtain relief from the stay"). As stated succinctly by a leading bankruptcy treatise:

The holders of secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any contractual or other remedies available against the chapter 13 debtor or their collateral.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1](b), at 1326 (15th ed. rev.2000). The foregoing underscores the futility of Debtor's first rationale for not dismissing this case, *i.e.,* he will treat Advanta's claim outside the plan.

There is another reason the proposed new plan excluding Advanta is not a viable option. Consistent with the court's need under § 1325(a)(6) to determine feasibility of the plan, the debtor must reveal the claims which are to be treated outside the plan. *Foster,* 670 F.2d at 490. Debtor has not prepared a proposed new plan nor testified as to his intentions with regard to

one.[6] I was assured that Debtor had other claims that could form the foundation of a plan. Even without knowing what those claims might be, it is clear that the Debtor, who cannot pay his mortgage obligation, would not be able to perform a plan and pay Advanta who does not consent to any modifications of its contractual and state law rights and remedies, outside the plan. Debtor appears to believe that what happens outside the plan is of no relevance to this proceeding. I respectfully disagree.

Finally, a bankruptcy proceeding that does not deal with the claim of Debtor's mortgage except to try to utilize the stay does not serve a valid bankruptcy purpose. Thus, I find that the filing of a new plan, as suggested by Debtor's counsel, excluding Advanta but including one or more of the previously excluded claims does not represent a good faith effort at rehabilitation of the Debtor's financial affairs. Rather it is an improper strategy to maintain the Chapter 13 case for the purpose of litigating with Advanta the state law claims without establishing entitlement to a stay.

2. *Vincente I was incorrect in concluding that the Debtor cannot modify the mortgage.* I have already addressed and rejected the Debtor's position on this point based on the reasons and authority stated in Vincente I, 257 B.R. at 182–83. Debtor's counsel acknowledged that Vincente I has been appealed. Exhibits D–5 and D–6. An appeal is the proper vehicle to challenge this Court's rulings. However, pendency of this Chapter 13 case, and concomitantly the automatic stay, is not an appropriate substitute for a stay pending

---

**6.** I questioned his counsel as to what claims would be provided for in the plan since none other than that of Advanta had been dealt with in the two prior plans, leaving the other secured claims outside the plan (whatever that meant) and paying nothing to unsecured

creditors. Based on the history of this case and the Debtor's objective in seeking bankruptcy relief, the solution proposed is of questionable merit even if the feasibility requirement did not pose the impediment it plainly does.

appeal which I am advised has not been secured.

3. *There is a pending adversary proceeding that may reduce or eliminate Advanta's secured claim.* I also addressed the ability to utilize the pendency of an adversary case to forestall duties under Chapter 13 in Vincente I, 257 B.R. at 182–83. That adversary proceeding, according to Debtor, could make a difference in this case because it would allegedly establish his ability to modify the Advanta's secured claim under § 1322(b). If he were successful in stripping down the mortgage, a plan could be feasible. However, as noted in paragraph 2 above, I have decided this issue adversely to Debtor, and it is being appealed without a stay. For this reason, the pendency of the adversary case to the extent it seeks modification of Advanta's mortgage pursuant to § 1322(b) is an insufficient basis to continue this case.

Debtor also argues that the pending adversary proceeding may result in the elimination or reduction of the secured claim as a result of certain non-bankruptcy law claims. This contention was advanced in support of confirmation but in the absence of evidence being presented at the confirmation hearing, I gave no weight to this litigation as a reason favoring confirmation of the plan. 257 B.R. at 182–83.[7] Having concluded as much, I recognized that Debtor has not had his day in court on these claims, the result of which he asserts may be to eliminate his mortgage. Vincente I, 257 B.R. at 184. I noted that he is free to pursue that possibility in a non-bankruptcy forum. Indeed were he to succeed on his claims under federal and state consumer protection law that allow rescission of the mortgage, a Chapter 13 bankruptcy case would be presumably be of no utility to him.

A review of the Amended Complaint, Exhibit D–8, reveals claims under the Federal Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; Homeowner's Equity Protection Act, 15 U.S.C. § 1639; Pennsylvania Unfair and Deceptive Act and Practices Act, 73 P.S. § 201–1; and Equal Credit Opportunity Act, 15 U.S.C. § 1691. Notably Debtor does not contend that Advanta's claim is overstated. He is not challenging the amount of the debt but rather the practices employed by Advanta to create and collect it. He contends that as a result of various alleged violations of the foregoing consumer protection laws, the Advanta mortgage should be rescinded and he should have no liability for the loan balance. He also seeks statutory damages of $2,000 under TILA, a refund of the $4,493.61 he paid to Advanta on this loan and his counsel fees. It is apparent to me that this lawsuit is not in furtherance of a reorganization under Chapter 13 since its goal to is to avoid the mortgage and discharge the claim under non-bankruptcy law and to secure affirmative relief in the form of damages that are *not* contemplated to be distributed to creditors notwithstanding that the claim is an asset of his

7. If these non-bankruptcy law claims were advanced as a basis to stay a state law foreclosure action (essentially what is being done by maintaining the bankruptcy case with its automatic stay), the Debtor would have to prove entitlement to an injunction, *i.e.,* likelihood of prevailing on the merits. He could not merely state he has some claims. Apparently recognizing the deficiency in the record in Vincente I, Debtor's counsel sought to elicit the testimony of the Debtor relevant to the non-bankruptcy claims. I concluded they were not relevant to this proceeding. In the absence of a proper evidentiary objection, I admitted certain documents related to the litigation. Other than the Complaint which I discuss below, they are without probative value to the question I am addressing now and, of course, they are without utility to fill the evidentiary void of the prior proceeding, now on appeal.

estate. Rather the Chapter 13 case is in furtherance of the lawsuit, using the automatic stay as a stay pending appeal without demonstrating entitlement to such injunction.[8]

I questioned Debtor's counsel as to why the pending adversary proceeding, raising as it does purely non-bankruptcy claims and defenses, could not proceed in such

other forum. Her concern was that if the bankruptcy case were dismissed so that this court no longer had jurisdiction over the claims raised by the adversary proceeding,[9] Debtor might be barred by applicable statute of limitations from prosecuting such claims elsewhere.[10] However, this dilemma is susceptible to resolution by allowing the transfer, rather than the dismissal, of the lawsuit.[11]

8. It may be that Debtor's claims are so meritorious that he would prevail in securing a stay. As noted below, I leave that issue to the court that will adjudicate this non-bankruptcy dispute.

9. According to the Third Circuit Court of Appeals in *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576, 580 (3d Cir. 1989):

As a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings" because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings.

Analogizing to the disposition of ancillary and pendent claims in federal court, an exception may be made and the court may, in its discretion, retain jurisdiction based on notions of (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related issues involved. *Id.* (debtor was discharged after adversary case was fully tried but before disposition was rendered). Applying these criteria, I would not retain jurisdiction to try this case in bankruptcy court.

10. I accept the Debtor's concern on this point without independently examining the limitations issue for each of the statutory claims. If the statute has not run, transfer would not be necessary since a new action could be filed. In either case, the Debtor's claims are preserved.

11. The Federal Courts Improvement Act of 1982, 28 U.S.C. § 1631, permits the transfer of an action between any two federal courts when it finds that it lacks jurisdiction but that another federal court has jurisdiction. Transfer pursuant to § 1631 is appropriate where (1) the transferee court lacks jurisdiction; (2) the transfer is in the interest of justice and (3)

the transfer is to a district in which the action could have been brought when the complaint was filed. *United States of America v. American River Transportation*, 150 F.R.D. 587 (C.D.Ill.1993). These elements are satisfied here. First, the dismissal of the bankruptcy case severs the jurisdictional nexus between the adversary action and this court. 28 U.S.C. § 1334. Second, the claims asserted in the Complaint arise for the most part under federal statutes for which the district court is a proper forum. *Hicks v. United States*, 23 Cl.Ct. 647, 652 (1991) (Transfer from Court of Claims to District Court as proper forum for ECOA claim.) Third, transfer would be in the interests of justice to preserve the Debtor's claims that could be otherwise lost through the running of the applicable statute of limitations on a new action. *Hempstead County and Nevada County Project v. United States Environmental Protection Agency*, 700 F.2d 459, 463 (8th Cir.1983) (because statute of limitations may have expired so as to preclude a filing in the district court at this date, it is in interests of justice to transfer rather than dismiss the action); *American River Transport.*, 150 F.R.D. at 592 (since dismissal will preclude plaintiff from asserting its claim in any other court because of expiration of statute of limitation and § 1631 advocates the preservation of a cause of action and adjudication on the merits when possible, it would be in the interests of justice to transfer). While the Third Circuit Court of Appeals in *McLaughlin v. ARCO Polymers, Inc.*, 721 F.2d 426, 429 (3d Cir.1983), noted legislative history which states that § 1631 "is broadly drafted to allow transfer between any two federal courts," S.Rep. No. 275, 97th Cong., 1st Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 40, my research failed to uncover any case where the bankruptcy court was the transferor court. Section 1631 speaks of a court within the definition of 28 U.S.C. § 610.

■ In the absence of any bankruptcy purpose to continue this Chapter 13 case, and finding the proffered reasons for its retention being without merit, cause exists to dismiss the case. 11 U.S.C. § 1307(c). The Debtor has requested that if I were inclined to dismiss the Chapter 13 case, that he be allowed to convert his case to one under Chapter 7. The decision to dismiss or convert a bankruptcy case is within the discretion of the bankruptcy judge. Once "cause" for dismissal or conversion has been established under § 1307, whether conversion or dismissal is more appropriate is a question Congress left to the sound discretion of the bankruptcy court. H.R. Rep. 989, 95th Cong., 1st Sess. 405 (1977), *reprinted in* 1978 U.S. Cong.Code and Ad. News 5787. *Accord, e.g., Matter of Sullivan Central Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir.1991); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989). In so determining, a court is not required to provide an exhaustive discussion of its reasoning. *In re Koerner*, 800 F.2d 1358, 1367–68 (5th Cir.1986); *In re Nardi*, 1991 WL 255681, 1991 U.S. Dist. LEXIS 17179 (E.D.Pa.1991). I have concluded based on the entire record of these proceedings that dismissal, not conversion is warranted.[12]

I note that the Debtor provided no reason for his request to convert. I would be inclined to grant the request if Debtor's objective was to secure a discharge of his debt. However, his testimony was to the contrary. Keeping in mind that the Debtor's bankruptcy goal is to retain his house, I suspect that the pending Chapter 7 case will be utilized, at least for some period, to retain the stay for the purpose of continuing the litigation against Advanta. This will necessitate a motion for relief which would be readily granted since all of the issues relevant to that determination have been decided adversely to Debtor and are the law of the case. Moreover, it is hard to understand the long term efficacy of this step from Debtor's standpoint. Debt-

---

Whether the bankruptcy court is a court within the definition of § 610 for the purposes of § 1631 is not readily answered and beyond the scope of this opinion. Suffice it to say that if a federal forum is sought and the transfer statute is not available, there are other options to accomplish the same result.

Pennsylvania law also allows a federal court to transfer a case to a state court rather than dismiss it where there is no independent basis for retaining federal court jurisdiction over state law claims. 42 Pa. Const.Stat.Ann. § 5103(b)(1). The Complaint here raises a state law claim. The state court will treat the matter as if originally filed in the state court if the litigant complies with the procedures set forth in the statute for such a transfer. *Williams v. F.L. Smithe Machine Co.*, 395 Pa.Super. 511, 515, 577 A.2d 907, 909 (1990). In recognizing the provision of the Pennsylvania Judicial Code that is applicable to "any matter transferred or remanded by any United States Court for a district embracing any part" of the Commonwealth, the Third Circuit Court of Appeals noted its utility in preventing parties from being trapped by jurisdictional technicalities that prevent a resolution of disputes on the merits. *Weaver v. Marine Bank*, 683 F.2d 744, 747 (3d Cir.1982). According to the *Weaver* Court, "the inherent power that is vested in the federal courts 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases ... permits the court to elect to use such a state mechanism, if available.' "

I express no view as to which non-bankruptcy court is the appropriate forum for this litigation. I only note that loss of the bankruptcy forum does not strike a fatal blow to Debtor's claims. Judge Fitzgerald, who sits by designation in this District and who has handled pretrial proceedings in the adversary case, has indicated her willingness to transfer the case to a forum of the Debtor's choosing if the bankruptcy is dismissed. Accordingly, prior to effecting the dismissal, I will allow the Debtor an appropriate opportunity to determine his venue and request such transfer.

**12.** I am not barring a refiling with leave of Court. Accordingly, future bankruptcy relief is available to Debtor if he has a valid purpose for seeking it.

or's claims against Advanta would be property of the Chapter 7 estate which the Chapter 7 trustee would be empowered to administer for the benefit of the estate.[13] If the Chapter 7 trustee, upon review of these claims, decides to abandon them and the real property as without equity for the estate, there would be no basis to leave the automatic stay in place. At that juncture, there would be no subject matter jurisdiction over this dispute as it would have no bearing on the bankruptcy estate. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). Thus, other than buying some additional time for the Debtor to resist payment to Advanta, no purpose is served by the conversion.

An Order consistent with the foregoing Memorandum Opinion will issue.

### ORDER

**AND NOW,** this 22nd day of March 2001, following the hearing held in connection with this Court's Order for Debtor to appear and show cause why this bankruptcy case should not be dismissed with prejudice and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** that:

1. The Chapter 13 case is **DISMISSED,** and Debtor may not file another case for 180 days without prior leave of this Court.

2. Within 10 days of service of this Order, the Debtor will file an Application for Transfer which will advise Judge Fitzgerald of his designated choice of forum for transfer of Adversary No. 00–0137. The Court will retain jurisdiction solely to transfer the adversary proceeding as provided herein.

3. If Debtor fails to perform the condition of paragraph 2 as ordered, the adversary case will likewise be dismissed without further notice or hearing.

---

**13.** As I noted to Debtor's counsel, success on the claim for rescission of the mortgage would create an unencumbered asset for liquidation and payment of creditors. If I granted Debtor's request for conversion to Chapter 7, I would not allow a subsequent dismissal of the case so the Debtor could retain all the benefits of the litigation personally after enjoying voluntary bankruptcy protection since September 1999.