In re Carolyn M. WILE, aka Carolyn M.J. Wile, Debtor.

Carolyn M. Wile, William C. Miller, Chapter 13 Trustee, Plaintiffs,

v.

Household Bank, F.S.B., Decision One Mortgage Company, Viking Mortgage Services, Inc., Defendants.

Carolyn M. Wile, William C. Miller, Chapter 13 Trustee, Plaintiffs,

v.

Conseco Finance Consumer Discount Company, Accelerated Mortgage Co., American Home Concepts, Inc., Defendants.

Bankruptcy No. 02–36538DWS.
Adversary Nos. 02–1373, 02–1397.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 9, 2004.

David A. Scholl, Media, PA, Counsel for Plaintiff.

Andrew K. Stutzman, Philadelphia, PA, Counsel for Defendants Adv. No. 02–1373.

Conseco Finance Consumer Discount Co., c/o C.T. Corporation System, Philadelphia, PA, Defendant Adv. No. 02–1397.

William C. Miller, Philadelphia, PA, Chapter 13 Trustee.

Dave P. Adams, Philadelphia, PA, United States Trustee.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the (1) Motion for Relief filed by Fairbanks Capital Corporation ("Fairbanks"); (2) the Chapter 13 Trustee's Motion to Dismiss and (3) confirmation of Debtor's Amended Chapter 13 Plan.[1] This case has taken the increasingly familiar route of certain bankruptcy cases that are ostensibly a vehicle to seek rescission of a mortgage usually secured in connection with some extension of credit for home improvements.[2] Typically a Chapter

---

1. Confirmation was first scheduled on May 1, 2003 and continued three times on the basis of the pending Adversary Proceeding No. 02–1373. At the pretrial hearing in that adversary case, the parties were advised that confirmation and a pending Trustee's motion to dismiss would go forward at the next hearing on October 9th notwithstanding its pendency. However, on October 7, 2003, Debtor filed an amended plan, deferring confirmation until November 20, 2003 for service and objections to be filed. Objections were lodged by Fairbanks and Decision One.

2. While not characterizing this case in particular as such, these actions are often described as predatory lending cases. Commonly the recipient of the funds, usually a contractor, and sometimes the original mortgagee are judgment proof, and the party from whom relief is effectively sought is the current mortgagee who has purchased the loan as part of a securitization package and to whom the debtor has the outstanding obligation. Federal and state consumer protection statutes have been enacted to provide relief from the fraudulent practices that jeopardize the homes of

13 case is filed with the intention of gaining the benefit of the automatic stay against mortgage foreclosure while an adversary case is prosecuted against the mortgagee. The debtor's Chapter 13 plan fails to provide for the mortgagee's claim, relying on the pendency of the adversary case as a basis for non-payment. Pending resolution of the litigation, the debtor usually makes no payments to the mortgagee and only minimal monthly payments to the Chapter 13 trustee.[3] These cases often have little, if anything, to do with reorganization under Chapter 13 of the Bankruptcy Code. Rather the debtor's hope is that the passage of time and the pendency of litigation without current payment will persuade the mortgagee to accept a negotiated solution with the debtor, usually in the form of a restructured and reduced loan. Where the strategy does not attain this outcome, ultimately the mortgagee seeks relief from stay or opposes confirmation for lack of plan feasibility, both situations before me now.[4]

## BACKGROUND

On November 19, 2002 Debtor filed this Chapter 13 case.[5] Her Schedules evidence her ownership of a home at 2709 S. Darien Street, Philadelphia ("Premises") which she values at $55,000 and which is encumbered by a first mortgage in favor of Fairbanks in the amount of $42,000 and a junior mortgage for a home improvement loan in favor of Conseco FinanceHome Improvement Division in the amount of $20,000. Doc. No. 12. She also lists seven credit card companies holding unsecured claims aggregating $34,677.59.

Debtor's Chapter 13 Plan, contemporaneously filed, evidences disposable income of $13 per month, of which $10 was dedicated for 36 months as payment to the Chapter 13 trustee (the "Trustee"). *Id.* While the Plan was amended on October 7, 2003, Doc. No. 110, the changes are not material to the outcome here. Both versions contemplate total funding of $360 to be utilized to pay the Trustee's commission with the balance applied against Debtor's

---

unsophisticated and low income consumers who enter into these loan transactions.

3. Where there are other secured claims, such as tax liens or a car loan, the payments may be substantial but the omission of any payment to the disputed mortgagee is a common element.

4. This case is different than some others as the Debtor does have other debt she wishes to discharge. However, as noted below, it is clear that her circumstances lent themselves to filing a Chapter 7 case as she now requests. She did not do so as such a filing would not have created jurisdiction for the adversary cases that have been the driving force for this bankruptcy.

5. I shall take judicial notice of the docket entries and record documents filed by Debtor in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991);

*Levine v. Egidi,* 1993 WL 69146, at *2 (N.D.Ill.1993); *In re Paolino,* 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them." *Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D.Tex.1996) (statements in schedules). *See also In re Musgrove,* 187 B.R. 808 (Bankr.N.D.Ga.1995) (same); *In re Leonard,* 151 B.R. 639 (Bankr.N.D.N.Y.1992) (same).

counsel's fee.[6] Objections to the Amended Plan were filed by Fairbanks and Decision One on grounds set forth in the discussion below. Debtor has regularly made her $10 payment each month. However, on May 1, 2003 the Trustee filed a motion to dismiss this case because the filed proofs of claim far exceeded the total plan funding. The motion was adjourned five times until November 20, 2003 on the basis of two pending adversary proceedings described below which were represented to be the only impediment to confirmation. Confirmation likewise has been continued six times from its initial listing on May 1 until November 20, 2003, the Debtor having been previously advised that the pendency of the adversary proceedings would not be cause for further continuations.

On December 10, 2002 Debtor filed a Complaint against Household Bank, F.S.B.("Household"), Decision One Mortgage ("Decision One") and Viking Mortgage Services, Inc. ("Viking") ("Adversary 02–1373") seeking to enforce her right to rescission under the Truth in Lending Act ("TILA") so as to, *inter alia,* avoid the first mortgage on her home and receive damages from Household (the presumed mortgagee), Decision One (the presumed servicing agent) and Viking (the mortgage broker). On February 10, 2003, Household and Decision One filed a joint motion to dismiss the complaint which was answered with a cross motion for summary judgment by the Debtor. One week after the contested matters were argued and taken under advisement, the parties advised the Court that rather than seek an adjudication, they wished to submit to mediation under this Court's voluntary mediation program. The motions were dismissed without prejudice. Doc. No. 24.[7]

On September 25, 2003, I was advised by the mediator that a resolution was not achieved. Moreover, he informed me that while not a party to Adversary 02–1273,[8] Fairbanks, the current servicer of the mortgage, had participated in the mediation and that given its failure, Debtor would soon be joining it as an additional defendant. On October 2, 2003, an Amended Complaint was filed adding Fairbanks as presaged. Doc. No. 34. On November 10, 2003 Household and Decision One filed their answer, affirmative defenses, and crossclaim, Doc. No. 36, and on November 25, 2003 Fairbanks did likewise.[9] After one year, the pleadings are

---

**6.** The amended plan deletes the earlier representation that payments would be made on the mortgages "outside the plan" to protect their interests in the event the contemplated adversary proceedings are not successful. Rather it provides that such payments will be made if found to exist after the conclusion of the litigation. The amended plan also makes clear that the plan payments should be applied to counsel's unpaid attorney's fee of $885.

**7.** The Order provided that if the mediation was unsuccessful the mediator should so advise the Court after which the parties had ten days to relist the motions. *Id.* They failed to do so. Debtor's counsel, apparently without the benefit of having reviewed the Order, contended that the motions were still pending. They are not.

**8.** In their objections to confirmation, Fairbanks and Decision One attempted to set forth the roles played by each of the parties to Adversary 02–1373. The original mortgagee was Decision One who assigned the mortgage to Household. Fairbanks is the servicing agent for Household (according to Fairbanks who one would think would know) or the subsequent assignee from Household (according to Decision One). However, in its motion for relief dated October 27, 2003, it avers that it is the current mortgagee by reason of a recorded assignment. Doc. No. 43.

**9.** At the hearing, Debtor's counsel indicated that Debtor would be prejudiced by the dismissal of Adversary No. 02–1373 because she had secured a default against Household. A review of the file evidences a Praecipe for Entry of Default addressed to the Clerk filed

complete, and presumably the parties are ready to engage in discovery or renew dispositive motions.

On December 17, 2003 Debtor filed a Complaint against Conseco Finance Consumer Discount Company ("Conseco"), Accelerated Mortgage Company ("Accelerated") and American Home Concepts ("American") ("Adversary No. 02–1397") seeking to enforce her right to rescission under the Truth in Lending Act so as to avoid the second mortgage on her home and receive damages from Conseco (the mortgagee), Accelerated (the broker) and American (the contractor). On February 2, 2003 Conseco filed a suggestion of bankruptcy and matters were stayed as to it. On June 26, 2003 I approved a settlement between Debtor and American, Doc. No. 24, and at the parties' request, placed the remainder of the case in suspense pending further developments in the Conseco bankruptcy.[10]

On October 27, 2003 Fairbanks filed its latest motion for relief from the automatic stay (the "Relief Motion"),[11] averring lack of post-petition payments since December 12, 2002, post-petition arrears as of October 23, 2003 of $4,982.54 and "no reasonable prospect for reorganization." Doc. No. 43. Debtor contests the relief sought therein on the grounds that Fairbanks' security interest is at issue in Adversary No. 02–1373 and that in the least, a dispo-sition of this contested matter should await the outcome of the Adversary. Doc. No. 58. At the hearing on the Relief Motion, Fairbanks elicited the testimony of the Debtor who acknowledges making mortgage payments until her bankruptcy case was filed and none thereafter. Monthly payments of $217.00 to Conseco, her second mortgagee, also were discontinued in November 2002. She also confirmed her post-petition arrears in the amount of $4,982.52 to Fairbanks and her current monthly income of $647.00, Exhibits M–1 and M–2, and expenses of $623.56, Exhibit M–3.[12]

At the conclusion of the testimony, and as a result of prior colloquies with Debtor's counsel, David A. Scholl, Esquire in this and other cases, Mr. Scholl acknowledged that I would be disinclined to allow this bankruptcy case to continue on the grounds of the pending adversary cases with no current payments being made to the mortgagees and no funds accumulating with the Trustee to fund the alleged rescission claims. While not agreeing to the relief being sought by Fairbanks or the Trustee, he nonetheless requested that if I were to conclude that the Chapter 13 case should be dismissed, that I convert it to a case under Chapter 7 instead. Moreover, recognizing that there would be no basis for this Court to adjudicate the pending adversary cases in a Chapter 7 proceeding,

November 17, 2003 and entered on the docket on November 20, 2003. While a proposed "Entry of Default" was transmitted, there is no record on the docket that it was ever entered. Since the answer was filed three business days later, the Clerk may have concluded there was no basis to do so.

10. Thus, there has been no activity in this adversary case. A conference status call is scheduled for January 13, 2004 but is cancelled in light of this decision.

11. An earlier motion for relief filed on April 10, 2003 had been withdrawn without com-ment before the hearing on August 21, 2003. Doc. No. 33.

12. Fairbanks questioned Debtor about the reasonableness of certain of those expenses, such as her cable bill of $96. Even were it possible for Debtor to tighten her belt a little more, it would not effect the outcome in this case. She simply has too much mortgage debt to make current payments to Fairbanks which according to its proof of claim amount to approximately $740 per month.

he requested that I transfer them to the federal district court pursuant to 28 U.S.C. § 1631.

## DISCUSSION

■ Section 1307(c) provides that upon the request of a party in interest and after notice and hearing, the court may dismiss a Chapter 13 case or convert it to a case under Chapter 7, whichever is in the best interests of creditors and the estate, for "cause." 11 U.S.C. § 1307(c). The ten examples of "cause" to convert or dismiss a chapter 13 case listed in § 1307(b) are illustrative, not exhaustive. 11 U.S.C. § 102(3) ("includes" and "including" as used in this title are not limiting). *See also* H.R.Rep. No. 95–595, at 405–06 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6361–62 (relating to § 1112(b)). The Trustee seeks dismissal because the Chapter 13 plan does not adequately fund the filed claims and therefore is not feasible. Pursuant to § 1325(a)(6), a Chapter 13 plan cannot be confirmed unless it is feasible. That section provides that a Chapter 13 plan is not confirmable unless a "debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).

■ The basis of the Trustee's objection is that the proposed plan does not deal with the secured proofs of claim filed by Fairbanks and Conseco. The plan expressly dismisses any obligation to either creditor based on the claims lodged in the two adversary proceedings. While Debtor advocates maintaining the status quo until those matters are adjudicated, it is clear to me that a resolution of the adversary cases in Debtor's favor would not pave the way for a reorganization. First, the Premises are by Debtor's own estimate valued at $55,000, and she has no intention of selling it. Assuming that she were successful in avoiding the mortgages through her two rescission actions, there would clearly be equity in the Premises beyond Debtor's exemptions, and she would be required to contribute that amount to her plan to enable creditors to receive more than they would in a liquidation. 11 U.S.C. § 1325(a)(4). Her plan would fail the "best interests of creditors test" of § 1325(a)(4) unless the value of any equity over her exemption was paid to the Trustee for the benefit of creditors. However, it is equally apparent that she has no additional disposable income, barely making her $10 monthly payments to the Trustee as is. In short, even a successful outcome of the adversary cases does not advance a Chapter 13 reorganization.

Moreover, even if she prevailed in the adversary cases, her Plan is also unconfirmable because the *quid pro quo* of the satisfaction of the mortgage liens upon rescission is the repayment of the amount advanced under the loans by Fairbanks and Conseco. In *In re Williams*, 291 B.R. 636 (Bankr.E.D.Pa.2003), I considered the consequence of rescission of a mortgage under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635. Rejecting those cases that had held that a rescinding debtor must repay the loan amounts advanced as a condition precedent to lien avoidance, I fashioned a remedy that allowed the debtor to maintain the statutory rights conferred by the Bankruptcy Code while fulfilling her duty to tender payment to the creditor after its lien has been voided as required by TILA and its implementing regulations. In so doing, I sought to harmonize the legislative objectives of both federal statutes, *i.e.*, the parties are brought to the *status quo ante* consistent with 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d) and the Debtor does not forfeit her bankruptcy rights. *Id.* at 662. To this end, I ordered the debtor in *Williams* to file an amended plan that classified the lender's now unsecured claim separately

and paid the liquidated amount *in full* over the remaining plan life.[13]  I concluded that:

> Absent a plan providing for the payment of BankOne's claim as so noted, confirmation will elude this Debtor.  If confirmation cannot be secured in the time frame set forth below, this case will be dismissed.  BankOne will then be free of the automatic stay and may exercise its state court remedies in connection with its judgment.  These procedures, in my view, are consistent with TILA's regulatory scheme while ameliorating the potential of an inequitable result to BankOne.

*Id.* This decision expresses my view of the appropriate use of the bankruptcy court as a forum for litigating non-bankruptcy actions such as the adversary cases.  In short, if a debtor wishes to utilize this court to implement rescission of a mortgage loan, her plan should treat the secured claim as prescribed in *Williams* which is the best legal result she can obtain in the adversary proceeding.[14]  What this Debtor has done is to ignore the consequences of rescission and make no provision for the lender's claim, even as unsecured.  The effect of this strategy is to maintain a Chapter 13 plan with insufficient plan payments, resisting the Trustee's motion to dismiss by pleading the pendency of an adversary proceeding, the favorable results of which still will not allow confirmation to be achieved.  While this would at first blush seem to have no point, Debtor's counsel indicates that the goal is to convince the lender to restructure the loan on terms that the debtor can afford as a settlement.[15]  To avoid costly litigation that at best will result in foreclosure of low cost housing for the mortgagee, some mortgagees are amenable to this resolution.  While this strategy may realize a salutary outcome for some debtors, it really has nothing to do with reorganizing under the provisions of Chapter 13 of the Bankruptcy Code. These same cases could be litigated in a non-bankruptcy forum, albeit without providing the plaintiff/debtor the benefit of an automatic stay.

In short, I easily conclude that there is "cause" for dismissal of this case under § 1307(c)(1) and (5).  Debtor has

---

13.  I noted as follows:

> I find no unfairness from relegating BankOne to unsecured status as that is the precise consequence Congress intended by § 1635(b).  The unfairness arises only if bankruptcy is utilized to permit payment of anything less than the full amount of the claim.  The fact that full payment may be deferred while the Debtor is under court protection is a consequence of bankruptcy and not an inequitable result.  BankOne's unsecured claim of $9,274.72 will be memorialized in a judgment and the stay will be modified for the limited purpose of allowing BankOne to record it as protection against potential future creditors of the Debtor.
>
> *Id.*

14.  While *Williams* only represents my view on this subject, other judges are even more restrictive, requiring repayment as a condition to rescission.  *See, e.g., In re Apaydin,* 201 B.R. 716 (Bankr.E.D.Pa.1996).  I note that the issue of whether 15 U.S.C. § 1635 requires tender before even allowing a borrower to proceed to trial on a rescission claim is the subject of a petition for writ of certiorari to the United Supreme Court in *Yamamoto v. Bank of New York,* 329 F.3d 1167 (9th Cir.2003).  2003 WL 22514335 (U.S. Oct.27, 2003).

15.  If successful, the restructured loan is paid "outside the plan" by agreement of the parties.  The Chapter 13 case is expected to proceed to conclusion with *de minimus* payments being made to the Trustee which are utilized to satisfy the Trustee's commission and debtor's counsel fee.  Presently I have under advisement (and being briefed) such a case in which the Trustee has objected to confirmation of a plan that has such provisions because it simply pays no creditors.

enjoyed bankruptcy protection for one year during which she has made no payments to Fairbanks and Conseco. They have participated in a mediation and now at least Fairbanks seeks be to relieved of the bankruptcy stay. Based on the evidence elicited at the hearing, it is entitled to such relief because its claim is not dealt with in this bankruptcy case nor is it receiving any current payment. Such delay is prejudicial to this creditor given the Debtor's lack of intention and inability to deal with such claims. The Chapter 13 plan filed is patently infeasible and confirmation under § 1325 is accordingly denied. Given the Debtor's financial resources and obligations, a further amended plan would be an exercise in futility and not unexpectedly no request has been made to file one.

■ Once "cause" has been established, whether conversion or dismissal is more appropriate is a question Congress left to the sound discretion of the bankruptcy court. *See e.g. Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949–50 (2d Cir. BAP 1998) (citing H.R. Rep. 95–595, at 428 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6383–84). *Accord Matter of Sullivan Central Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir.1991); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989) (discussing § 1112(b)). The Debtor has requested that I allow conversion rather than order dismissal since the Debtor has other claims that she wishes to discharge in bankruptcy. The Trustee does not object to this request nor does Fairbanks so long as it secures the relief it would have obtained upon dismissal. Since Fairbanks has filed a motion for relief from stay and since I have found that the Debtor is neither making payments to Fairbanks nor has provided for it in its Chapter 13 plan, it is entitled to that relief under § 362(d)(1) and (d)(2). I will grant that relief, and it will remain effective in the Chapter 7 case.[16]

■ The question then becomes what is the impact of the conversion on the pending adversary cases.[17] The causes of action set forth in the adversary proceedings are assets of the estate subject to administration by a Chapter 7 trustee. The Debtor is seeking to rescind two mort-

---

16. On the other hand, Conseco has not filed a motion under § 362(d) and therefore the automatic stay remains in place against it.

17. If the bankruptcy case were dismissed, generally all adversary proceedings would be terminated. *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576 (3d Cir. 1989). In *Smith*, the Third Circuit Court of Appeals adopted a three-factor test utilized by my colleague Bankruptcy Judge Bruce I. Fox in *In re Stardust Inn, Inc.*, 70 B.R. 888, 890 (Bankr.E.D.Pa.1987), in determining whether an exception should be made to that rule. The factors include: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related issues involved. 866 F.2d at 579. Applying these factors to the adversary cases pending here, I would not retain jurisdiction if the Chapter 13 case were dismissed. There is no judicial economy to conducting trial in this Court. Debtor has had the benefit of this Court's mediation program which was unsuccessful. Accordingly, an Amended Complaint was just filed adding Fairbanks as a new defendant. The parties are set to file dispositive motions and engage in discovery. The litigation is set to really begin. Pretrial proceedings and a trial that will follow would consume this Court's resources that could be better utilized adjudicating matters that will advance a viable bankruptcy case, leaving to a non-bankruptcy court the non-bankruptcy issues presented in the adversary cases. These issues are important, but uncomplicated. The controlling consumer protection law is well-developed and the litigation results will be driven by the facts at hand. Fairbanks supports the dismissal of Adversary No. 02–1373 recognizing that it will not ensure the end to litigation but merely a new forum. There is no unfairness to the Debtor as more specifically discussed below.

gages. Unless there were equity in the Premises beyond the Debtor's exemptions, the Chapter 7 trustee would not prosecute these claim as it would confer no benefit on the estate. Thus, the likely scenario is that the causes of action would be abandoned to the Debtor, a consequence the Debtor's counsel appears to assume when he requests that the cases be transferred to the district court under 28 U.S.C. § 1631 rather than dismissed outright. He notes that I employed that procedure in a prior case, *In re Vincente*, 260 B.R. 354 (Bankr.E.D.Pa.2001), and it would be appropriate here as well. I respectfully disagree.

First, Vincente's Chapter 13 case, unlike that of the Debtor here, was dismissed. Until the Chapter 7 trustee abandons the asset, any transfer would be premature. In *Sherrell v. Fleet Bank of New York (In re Sherrell)*, 1996 WL 550169 (N.D.N.Y.), upon conversion of a Chapter 11 case to one under Chapter 7, the bankruptcy court ordered the debtors to serve its Order finding that the pending adversary cases raising TILA violations were assets of the Chapter 7 estate on the Chapter 7 trustee and directed the trustee to intervene in the adversary case or abandon the causes of action being asserted by the debtors. When the trustee abandoned the assets, the court dismissed the adversary cases for lack of jurisdiction, a conclusion affirmed by the district court. While perhaps an exercise on the facts here, I will nonetheless afford the Chapter 7 trustee the same opportunity to administer this asset by directing that intervention or abandonment occur within thirty days. If the Chapter 7 trustee fails to act during that period or any extension thereof, he will be presumed to have abandoned the causes of action. Suspension of the adversary proceedings beyond that date would be unfair to the Debtor.

■ If, as I expect, the Chapter 7 trustee does not administer the causes of action, the adversary cases will be dismissed without further notice or hearing. The remedy provided to the parties in *Vincente* is not warranted here. In *Vincente,* the Chapter 13 case was dismissed because I found that the debtor could not modify the mortgagee's rights under § 1322 and a plan could not be confirmed. While the pending adversary which raised a claim for rescission would have been dismissed with dismissal of the main case, I allowed the plaintiff to seek an order of transfer under 28 U.S.C. § 1631, which allows a court to transfer an action "if the transfer is in the interest of justice." [18] However, my decision was motivated by the Debtor's contention that a dismissal of the adversary proceeding might result in the loss of his claims because the statute of limitations might bar their prosecution elsewhere at that juncture. There is no such contention made here.[19] In any event, if the passage of time has worked to Debtor's disadvantage (a conclusion I do not reach), it is a detriment of her own making. In *Vincente,* had the debtor been successful in his litigation, he could have confirmed a plan. There was a reason for

---

**18.** I do not believe she ever did so rather settling the case after my decision was rendered.

**19.** When I mentioned that distinction to Debtor's counsel, he stated that the same problem might exist here. However, he only suggested as much when I raised the issue and gave no basis for his statement. Rather his argument was that a transfer would be fair to the Debtor. He pointed to the default she has secured against Fairbanks which as I have noted, does not appear on the record, and the pendency of the summary judgment motions which as I have noted were never resuscitated. A transfer under § 1631 is an extraordinary remedy and not to be lightly granted for the convenience of the plaintiff.

him to invoke this Court's jurisdiction. The same cannot be said for this debtor who has filed this case without any possibility of a Chapter 13 reorganization. Rather her motivation was to secure a bankruptcy court forum to prosecute her non-bankruptcy claims. While she apparently does have need for bankruptcy relief, it is to discharge debts, not reorganize. Chapter 7, not Chapter 13, is the appropriate vehicle for that relief.[20] To allow Debtor to transfer her case after enjoying a year of a futile Chapter 13 case would be to reinforce the questionable strategy that prompted this filing. Since she chose to file here, I will not entertain her belated request to effect a transfer to the district court on the grounds of convenience as she was well aware that these non-bankruptcy claims are statutorily contemplated to be heard there, not here, when they do not advance any purpose of a Chapter 13 case. Finally, taking "a peek at the merits" of the cases, as I may do, it appears that a transfer would raise false hopes and waste judicial resources since Debtor is incapable of performing her part of the bargain should rescission be allowed. *See Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000).

An Order consistent with this Opinion shall issue.

### ORDER

**AND NOW,** this 9th day of January 2004, upon consideration of the (1) Motion for Relief filed by Fairbanks Capital Corporation; (2) the Chapter 13 Trustee's Motion to Dismiss; and (3) confirmation of Debtor's amended Chapter 13 plan, after notice and hearing, and for the reasons stated in the accompanying Opinion;

It is hereby **ORDERED** that:

1. The Motion for Relief is **GRANTED.**

2. Confirmation is **DENIED.**

3. This Chapter 13 case is converted to a case under Chapter 7.

4. Upon appointment of the Chapter 7 trustee, the Debtor shall serve him or her with this Order and Opinion and file a certificate of service with the Court. Within thirty (30) days of such service, the Chapter 7 trustee shall either intervene or abandon the causes of action set forth in Adversary Nos. 02–1373 and 02–1397. Failure to intervene shall be deemed an abandonment of the causes of action.

20. I reject the strategy of filing a chapter 13 case to secure the broader discharge available in a Chapter 13 case when there is no creditor repayment being made under a plan.